R. W. PHILLIPS ET AL. *v.* JOHN C. CHAMBERLAIN ET AL.

1. FRAUDULENT CONVEYANCE. *Invalid security. Subrogation. Case in judgment.*
S., combining fraudulently with P. for the purpose of effecting a settlement with his (S.'s) creditors, executed as part of the scheme a deed of trust for P.'s benefit on certain real estate. P. then, pursuant to the arrangement, bought up and paid off many claims against S., and took an assignment to a judgment and a mortgage, both of which were liens upon the land conveyed by the trust deed. The land was sold under the trust deed and P. became the purchaser, crediting the amount paid by him for S.'s benefit on the amount pretended to be secured by the trust deed. P. conveyed the land to his wife by deed of gift. Subsequently certain judgment creditors filed a bill to subject the land to the payment of their debts. *Held,* that as to existing creditors the trust deed was no security either to P. or his grantee, but that

the assignment of the judgment and mortgage was valid, and P.'s grantee was entitled to be subrogated to the rights of the assignors notwithstanding the fraud in the trust deed.

2. ACCOUNTING. *Rents and profits. Improvements.*
   Where an account is taken between a party in possession of land which creditors are seeming to subject to the payment of debts, the party in possession is not to be charged with increase of rent by reason of improvements made by him and for which he is allowed no compensation.

APPEAL from the Chancery Court of Noxubee County.

HON. F. A. CRITZ, Chancellor.

On the 20th day of February, 1877, Lewis E. Smith executed to George G. Dillard, as trustee, for the benefit of R. W. Phillips, a deed of trust upon certain described land and personal property to secure the payment of two thousand dollars, evidenced by the promissory note given by Smith to Phillips of same date, to cover advances and plantation supplies for the current year, and payable December 1, 1877. This note was subsequently surrendered and the debt satisfied, but the deed of trust was suffered to remain uncanceled as an apparent lien upon the land in question. On the 21st of February, 1877, Smith executed to H. W. Foote, as trustee, a deed of trust on the same property to secure to Henry Perritt the payment of ten thousand and thirty-seven dollars and twenty-five cents, evidenced by a promissory note of even date, due one day after date, the consideration of the note being an indebtedness incurred many years prior to its date. This deed of trust was executed for the benefit of Smith in order to place his property beyond the reach of other creditors, and with the understanding between Smith and Perritt that said deed should not be enforced against Smith. On the 4th of February, 1878, Smith executed a deed of trust on the same land to H. L. Jarnagin, Sr., as trustee, to secure payment to R. W. Phillips of ten thousand six hundred and fourteen dollars and forty cents, evidenced by note of even date payable one day after date. This note was surrendered and the deed marked canceled on the 22d of April, 1878, on which date Smith executed another deed of trust to the same trustee for the benefit of R. W. Phillips to secure a promissory note of even date

for nine thousand nine hundred and nineteen dollars and eighty-four cents, payable January 1, 1879, this sum of nine thousand nine hundred and nineteen dollars and eighty-four cents being the alleged aggregate amount of certain outstanding claims against Smith, bought up, in most instances, at a discount, and held by Phillips, and including also the expense incurred by Phillips in negotiating the purchase of said claims.   Among the claims included in the aggregate of nine thousand nine hundred and nineteen dollars and eighty-four cents are a judgment recovered by Margaret Tarleton in the Circuit Court of Noxubee County, February 22, 1877, against Smith for seven hundred and eighteen dollars and seventeen cents, and two promissory notes given by said Smith to Dew & Kirksey and secured by mortgages on the land in question, upon which notes there remained due at the date of their purchase by Phillips a balance of one thousand six hundred and twenty-five dollars and forty-two cents.   Neither the judgment in favor of Mrs. Tarleton nor the mortgages to Dew & Kirksey were entered as satisfied or canceled.   No part of the alleged debt secured by the Perritt deed of trust is included in the amount of nine thousand nine hundred and fourteen dollars and eighty-four cents secured to Phillips by the deed of trust of April 22, 1878, but said Phillips had an understanding with Smith and Perritt before said claims were purchased that the Perritt trust deed should be transferred to Phillips to enable him to control the property and make better terms in the purchase of the claims against Smith, and pursuant to this understanding the Perritt deed of trust was transferred to R. W. Phillips without consideration and for the benefit of himself and Smith.   Under the deed of trust of April 22, 1878, the mortgaged premises were sold to R. W. Phillips for eight thousand dollars, credited on the note secured, and to him conveyed by the trustee by deed of February 3, 1879.   R. W. Phillips conveyed the land so acquired to his wife, Martha Phillips, by deed of gift executed June 24, 1879.   Subsequently to the trustee's conveyance of the premises to R. W. Phillips, Smith remained in possession during the current year as tenant of Phillips, mortgaging his crops to secure notes for rent and for advances made by said Phillips, and

afterward, during the succeeding years, Smith, ostensibly in the capacity of overseer for Phillips as the agent of his wife, Mrs. Martha Phillips, remained in possession of the premises and continued to exercise full control over the same without any express contract or any definite understanding as to his compensation or the terms of his employment.

The complainants, judgment creditors of Lewis E. Smith, brought this suit, asking the court to declare the trust deed of February 20, 1877, satisfied, and to declare the trust deed of April 22, 1878, and the trustees' sale and deed of February 3, 1879, and the deed from R. W. Phillips to Martha Phillips, all fraudulent and void as against complainants, and to declare all of said property in the hands of Smith and R. W. and Martha Phillips subject to sale for the satisfaction of the judgments held by complainants. Complainants also ask for an account stated between Smith and R. W. Phillips to ascertain the amount actually due to Phillips on the 22d of April, 1878, after crediting Smith with all payments made by him and with the value of all rents, crops, and profits received by him after said date, and that a balance should be struck and all or so much as might be necessary of the property should be sold and the proceeds be applied to the payment, first, of the balance, if any, due to R. W. Phillips on such account, and, second, to the satisfaction of complainants' judgments. It was decreed by the court below that the Perritt deed of trust, the two thousand dollar deed of trust in favor of R. W. Phillips, the judgment rendered by the Circuit Court of Noxubee County, February 22, 1877, in favor of Margaret Tarleton against Lewis E. Smith, and the two mortgages in favor of Dew & Kirksey executed by said Smith, and the sale made by the trustee to R. W. Phillips of the property in question on February 3, 1879, the deed executed by said trustee on the same day conveying said land to R. W. Phillips, and the deed executed by R. W. Phillips on the 24th day of July, 1879, conveying said land to Mrs. Martha Phillips, should be set aside and canceled and all of said land subjected to a lien for the payment to Mrs. Martha Phillips of the balance due upon the debt of nine thousand six hundred and one dollars and twenty-eight cents,

being the amount found actually due under the deed of trust of April 22, 1878, for nine thousand nine hundred and nineteen dollars and eighty-four cents, under which said former sale was made. The court further decreed that the complainants and each of them should have a lien upon all of said lands for the payment of their claims, subject to said prior lien above mentioned, and that said debt of nine thousand six hundred and one dollars and twenty-eight cents should be subject to credits for the full value of the personal property and the annual rental value of said lands for the years 1879, 1880, 1881, 1882, and 1883, and also for the year 1884 if said Mrs. Martha Phillips should continue in possession of said lands, the taxes to be deducted from each year's rent, and the cause was referred to a special commissioner to take and state an account between the parties. From this decree respondents, R. W. Phillips and Martha Phillips, appealed, and complainants took a cross appeal.

*Jarnagin & Bogle,* for the appellants.

1. The sale was public, after due advertisement, and notorious, and no presumption of fraud could be raised by the fact of Smith remaining in possession afterward, even if unexplained. The publicity of the sale was notice to the world of the change of ownership, and rebuts any presumption of fraud that might arise if the sale had been private. *Cargill* v. *Ewing,* 13 S. & M. 79; *Garland* v. *Chambers,* 11 S. & M. 337; *Foster* v. *Pugh,* 12 S. & M. 416.

2. In order to vitiate a sale on account of fraud there must be fraud or notice on the part of the grantee, as well as fraud on the part of the grantor. *Anderson* v. *Roberts,* 9 Am. Dec. 235; *Garland* v. *Rives,* 15 Am. Dec. 756; *Baudin* v. *Roliff,* 14 Am. Dec. 181. The case at bar is stronger, because the fraud here charged is not in the instrument under which the purchaser bought, but in a separate deed.

3. The gravamen of the bill is fraud, and the allegations must be clearly proven in order to justify a decree for complainants. The bill is not sworn to, and the testimony of more than one witness is required to sustain the bill against the sworn denials of the answer. The Chancellor finds that the trust deed for two thousand

dollars, dated February 20, 1877, had been paid prior to the sale. There never was any dispute about that, and it was admitted in the argument that trust deed was given for supplies for the plantation, and was paid by the proceeds of the crop for that year. It was not canceled because the attention of the parties had never been directed to it. It is almost a universal custom to leave these crop liens uncanceled, at least until the business dealings between the parties have ceased, and no one ever supposed that doing so was a fraud upon the rights of the creditors of the grantor, or that any one using ordinary diligence could be misled thereby.

4. A simple failure to cancel old trust deeds when they are paid off does not of itself vitiate a subsequent sale under a subsequent trust deed as to creditors of the grantor. Such a doctrine would upset half the sales in the State. Any active steps by Phillips, by which he deceived the creditors and prevented competition, might amount to fraud ; but the bare failure to cancel old trust deeds, without any intention to mislead cannot amount to a fraud. Diligence is required of the creditors. These old encumbrances had been past due for about two years or more ; the property was being advertised under a junior trust deed, and ordinary diligence on the part of the creditors would have led them to inquire of Smith or Phillips whether these old trust deeds were still unpaid. If they had done so and been deceived by Phillips they could have complained. It is evident that Phillips was not intending to deceive, and unless such was his intention, a failure to cancel these instruments (conceding that he had authority to cancel the Perritt trust deed) cannot vitiate his purchase. A mere oversight, without culpable intent, cannot be so harshly construed, especially where the creditor, by ordinary diligence, such diligence as an ordinarily prudent man would exercise, could have learned the facts by simple inquiry. *Sprowl* v. *Hibbler*, MSS. Nor can these complainants complain if all they claim on this head were conceded, because they were not injured by it. If the claims had been *given* to Phillips by these assignors, it would not have increased Smith's liabilities nor diminished his property. The only parties to complain of a misuse of apparent encumbrances are the parties who parted with their debts on the supposition that the encumbrances were real.

*L. Brame,* on the same side, argued orally and in writing.

1. So far as these other creditors are concerned, who filed this bill more than four years after this sale was made, it is wholly immaterial that Phillips did not pay the full amount of all the debts. *Prewitt* v. *Pulliam,* decided by this court in 1879, MSS. opinion. All that the law requires is that a man's property shall be applied to the payment of his debts, and, as the Chancellor finds, the debts of these other creditors will sustain the trust deed. There is not one word of testimony to show that these creditors released their debts to Phillips *on account of any wrongful or fraudulent conduct on the part of any one.*

2. The sale was open, public, and fair, and the property brought a much better price than property usually brings at a forced sale ; it brought two-thirds of its estimated value. It is nowhere *hinted* in the bill that the property sold for an inadequate price. In the case of *Sprowl* v. *Hibbler* this court sustained a sale under circumstances much more suspicious, if the court is to regard *mere suspicions,* than is alleged or shown here, and in that case the property sold for about half its value. I undertake to say that it is a part of the history of the country that property at public sales does not sell for an average of one-half of its value.

3. The mere fact that the prior trust deeds were left unsatisfied and uncanceled affords no evidence of fraud whatever, as was held by this court in the case of *Sprowl* v. *Hibbler* at the last term. *But the bill does not allege that the Perritt trust deed and others were left uncanceled for any fraudulent or improper purpose.* It is not alleged that Phillips knew anything of the failure to cancel the Perritt trust deed or that he had anything to do with this whatever. These matters were therefore not in issue and there has been no trial as to them.

4. These creditors had a full and fair opportunity to bid on the property at the sale, yet they did not see proper to do so. According to their own showing, they exercised no diligence. A court of equity will lend its aid only to creditors who have been vigilant and active in cases of this kind, and only then upon due and satisfactory proof.

5. The Chancellor treated Phillips as a mortgagee in possession and decreed that he should be charged with rents, yet he wholly disregarded the fact that valuable improvements have been made upon the land. In this he was clearly in error. *Statam* v. *Bryant,* 55 Miss. 261.

6. There is nothing in the allegation that Smith was allowed to remain in possession. The sale was a *public* one, and the world knew of the change of title. *Cargill* v. *Ewing,* 13 S. & M. 79.

*Rives & Rives,* for the appellees.

1. The Chancellor found correctly in the main as to the facts, but he was mistaken in holding the trust deed under which Phillips pretends to have bought the property valid. True, Smith had a right to prefer creditors if he exercised such preference *bona fide,* but he did not; all of Phillips' expenses in buying up the debts were charged up against Smith; this was because Phillips was buying them up for Smith's benefit; such charge could be justified on no other theory. The buying up the debts was for Smith's benefit, the subsequent execution of the trust deed to secure them was for his benefit, sale under that trust deed was for his benefit. All these acts were parts of the scheme which has thus far been carried out to shield Smith's property from his creditors—enable him to remain in the possession and enjoyment of it. Evidently this trust deed, as well as every other part and parcel of the fraudulent scheme, is void; and Phillips, so far as other creditors of Smith are concerned, is but a simple contract creditor of Smith in the amount actually expended by him in the purchase of the debts. If it is possible that we are mistaken in this and that the trust deed was not fraudulent, still it remains that the sale made under it by the direction of Phillips while he kept open on the record those prior liens that he knew ought to be canceled was fraudulent. Phillips' purchase was fraudulent and he must lose his money. He purchased in the effort to defraud us and he must take the consequences.

2. We think the Chancellor strained a little the well-established rule that an insolvent debtor has a right to prefer among his creditors. It is by no means clear that Smith was an insolvent debtor;

the testimony shows the contrary. Exclusive of the Perritt fictitious debt, he owed no debt except those taken up by Phillips amounting in the aggregate to nine thousand five hundred dollars, our claims amounting then to about five thousand dollars, and a small debt due to Bush, Yates & Co., his whole indebtedness not amounting to fifteen thousand dollars, while his property was worth eighteen thousand dollars, and none of it was exempt, as he was a bachelor and not the head of a family. In the next place he did not prefer to secure those valid debts to the parties justly entitled to the payment of them; he exercised no preference until after Phillips had for his, Smith's, benefit bought up those debts, then for his own benefit, and not in the exercise of a *bona fide* preference among his creditors he executed the note and trust deed of April 22, 1878.

3. The principles applicable to this case are familiar and, in the main, elementary. 1 Story Eq. Jur., § 350, § 188, § 190, § 186, § 189, § 333, § 349, § 187. Direct and positive proof of fraud is not necessary. Ib., § 188. When fraud is the natural and logical effect of a party's conduct, he is conclusively presumed to have intended it. *Hilliard et al.* v. *Cagle et al.*, 46 Miss. 345. The denial in the answer of fraud in terms amounts to nothing, if the answer or proofs show the facts alleged as to the conduct of the defendant, and the logical effect of that conduct was to mislead the judgment or undermine the interest of creditors, and thus operate a fraud upon them.

*S. S. Calhoon*, on the same side, argued the case orally.

CAMPBELL, C. J., delivered the opinion of the court.

We accept as correct the Chancellor's conclusion as to the facts of this case as embodied in his decree, but we dissent from his view of the law applicable to this conclusion. Our view is that the deed of trust executed by Smith, on the 22d of April, 1878, to secure Phillips, was invalid, and not enforceable, as against the complainants in this suit, and that it should be canceled, so far as they are concerned, and that Mrs. Phillips should not be permitted to invoke it as against them, but that the Dew & Kirksey mortgages and the Tarleton judgment are the only claims she has

which are paramount to the demands of these complainants. As to the other demands to secure which the deed of trust of 22d of April, 1878, was given, Mrs. Phillips holds them, as they were before the deed of trust was executed, and it is not a security for them against complainants. The deed of trust being invalid as to them, the several demands it was made to secure are left as they were before it was given, and each stands on its own foundation, as if the deed of trust had never had existence.

We therefore affirm the decree of the Chancellor, except that part of it which upholds the trust deed of 22d of April, 1878, as a valid security, and gives the amount secured by it precedence as a lien on the property conveyed by it over the demands of the complainants, and cancels the Dew & Kirksey mortgages and the Tarleton judgment, and as to these matters the decree is reversed on the cross appeal, and the said deed of trust is declared to be of no effect as against the complainants, who are entitled to subject said property to their demands next after the payment of the Dew & Kirksey mortgage debts and the Tarleton judgment.

An account will be taken on the principles indicated by the decree, but Phillips must not be charged with any increase of rent by reason of improvements made for which compensation is denied. *Tatum v. McClellan*, 56 Miss. 352.

*The costs of this appeal are taxed against appellants, and the cause remanded to be proceeded with in accordance with this opinion.*