GIDEON W. PITTS, Appellee, v. GIDEON W. SEAVEY,
Appellant.

1. **Title to Real Estate:** DEED FROM WIDOW AND HEIR OF PATENTEE: IDENTIFICATION: EVIDENCE. In an action to quiet title as against a tax title, the plaintiff proved that the land was patented to one John F.; that one Margaret F., a widow, and her daughter Nellie conveyed it to the plaintiff; that the name of Margaret's husband and Nellie's father was John F., who died intestate prior to the last named conveyance, and that Nellie was his only heir; that the John F. last named, prior to his death, claimed to be the same John F. who was the patentee of the land, and that he had papers in his possession relating to the land. *Held,* that it sufficiently appeared that the plaintiff's grantors were the widow and only heir of the patentee, and that the plaintiff had sufficient title to enable him to question a tax deed under section 897 of the Code.

2. **Deed:** ACKNOWLEDGMENT: SEAL OF NOTARY WANTING: EVIDENCE. A deed, which purports to be acknowledged before a notary public subsequent to the passage of the curative act of the Thirteenth General Assembly, is not admissible in evidence if the signature and certificate of the notary are not authenticated by his notarial seal.

3. **Tax Title:** ESTOPPEL TO DENY: PLEADING. Where in such action the plaintiff in his petition relied, *first,* upon his patent title and the invalidity of the tax title, but, *second,* claimed that, if the tax title was good, he was the owner of the land under such title, *held,* that he was not thereby estopped to deny the validity of the tax title, nor to object to the insufficiency of subsequent deeds conveying the same, and under which the defendant claimed.

4. ——: ADVERSE CLAIMS UNDER: PROOF OF OWNERSHIP. Where, in an action by the holder of the patent title to quiet his title to land as against a tax title, the plaintiff also claimed that, if the tax title was good, then he, and not the defendant, was the owner of it, and he permitted the defendant to testify that one from whom he derived title was the owner of the land, without requiring competent proof of that claim, *held,* that this was a sufficient showing of title in the defendant to enable him to question the tax title relied upon by the plaintiff under section 897 of the Code.

5. ——: ACTION TO SET ASIDE: LACHES DEFEATING. It appeared that the tax title had been in existence and unchallenged for nearly twenty years; that the claimants thereunder had paid all the taxes during that time, and that the defendant was an innocent purchaser for value

of that title. On the other hand, the evidence showed that the patent title had been in the patentee and his immediate heirs for twenty-six years; that the plaintiff purchased it from his heirs a short time before the commencement of this action; and that he had reason to know that the defendant claimed the land, and the basis of his claim; that the holders of the patent title, prior to the plaintiff, never paid any taxes on the land, except possibly for one or two years, and never concerned themselves about the land, although the public records showed that others were claiming it under the tax title, the invalidity of which was as apparent at any time as it was when the plaintiff purchased the land. *Held*, that the laches of the plaintiff's grantors was such that they could not have asserted their title in a court of equity as against the defendant's tax title, and that the plaintiff's equities were no better than those of his grantor.

*Appeal from Sioux District Court.*—HON. GEO. W. WAKEFIELD, Judge.

FRIDAY, MAY 19, 1893.

ACTION to quiet title. There was a decree for the plaintiff, and the defendant appeals.—*Reversed.*

*Geo. W. Hewitt,* for appellant.

*Pitts & Kessey,* for appellee.

KINNE, J.—The plaintiff's claim to the land in controversy is based upon two chains of title, one by patent from the United States to John Fleming in 1860, and by deed from Fleming's widow and heirs in 1886. The other chain is through a series of mesne conveyances from one Alex. Johnson, who derived his title by virtue of a tax deed issued to him by the treasurer of Sioux county, Iowa, in pursuance of a sale had August 3, 1868, for the delinquent taxes due on the land for the years 1861 to 1866. One of these mesne owners of the tax title was Preston C. Hudson, who, by warranty deed, dated March 18, 1876, conveyed an undivided one-half interest in the land to the defendant herein. November 14, 1882, the same Hudson quitclaimed his

interest in the land to R. M. Wright, which deed was
recorded eight days thereafter. Hudson also gave to
Wright a warranty deed to the land of the same date
as the quitclaim, but it was not recorded until Decem-
ber 11, 1885. Afterwards Wright, by quitclaim deed
dated September 23, 1886, and which was recorded
two days thereafter, conveyed his interest in the land
to the plaintiff herein. The defendant's warranty deed
from Hudson was not filed until some two months after
the filing of the deed from Wright to the plaintiff. The
plaintiff claims that, at the time he received his deed
from Wright, he had no notice or knowledge of the
defendant's equities in and to the land. The plaintiff,
while expressly claiming the invalidity of the tax title
by virtue of which the defendant claims one-half of the
land, and by virtue of which the plaintiff's grantor,
Wright, conveyed all of it to the plaintiff, still insists
that his purchase from Wright gave him whatever
interest Wright's grantor, Hudson, may have had in
the land. So that the present situation of the parties
is this: The plaintiff relies for title absolutely on his
chain from the government thorough the Flemings,
with a further claim that he acquired through the
Wright purchase the interest of his grantor, Hudson,
if he had any. The defendant claims only through his
tax title through Johnson. The tax title of the defend-
ant is assailed as void because the land was not assessed
for the years 1861 to 1866; that no taxes were levied
for either of these years; that there were no officers in
Sioux county charged with the duty of assessing prop-
erty and levying taxes in said years; that the delinquent
taxes were not carried forward; that no notice of the
tax sale was given; that the pretended sale was invalid
by reason of its having been adjourned for over two
months; that there was no sale had on August 3, 1868;
that the amount paid by the tax sale purchaser was
less than one-third of the amount of the sale; that the

county paid a large sum of money to redeem the land from the sale, on the ground that it was erroneous. Still other reasons are given against the validity of the tax sale. The defendant contends that the fee-title owners have been guilty of such laches as should prevent their recovery; that the defendant is an innocent purchaser for value, and without notice of fraud, if any, in the sale; that the plaintiff is barred by the statute of limitations; and that the plaintiff has not shown title in himself. It is admitted that prior to May, 1887, the land in controversy was wild and unoccupied; that about that time the plaintiff entered into the actual possession thereof, and has ever since retained such possession. The district court entered a decree for the plaintiff, quieting his title to the land.

I. Section 897 of the Code provides that no person shall be permitted to question a tax title without first

**1. TITLE to real estate: deed from widow and heir of patentee: identification: evidence.** showing that he, or the person under whom he claims title, had title to the property at the time of the sale. The defendant insists that such title has not been established by the plaintiff. In 1860, one John Fleming entered the land in controversy. There was introduced in evidence a certified copy of the patent from the United States to John Fleming of the premises in suit. In 1886, one Margaret Fleming, a widow, and Nellie F. Vanderwyst and her husband, executed their deed of said land to the plaintiff. It is said that the evidence does not sufficiently identify these parties as being the widow and all the heirs of John Fleming, the patentee of said land. The evidence shows that the name of the husband of Margaret Fleming was John Fleming; that he died March 9, 1884, leaving no will; that said Nellie Vanderwyst was the daughter of John and Margaret Fleming, and their only heir; that the John Fleming who was in fact the husband of Margaret Fleming, claimed, prior to his death, to be the John

Fleming who was the patentee of the land in suit. There is also evidence showing that the Fleming who was the husband of Margaret had possession of certain papers relating to the land. No evidence was offered to show that the patentee, John Fleming, was not the same John Fleming who had been Margaret Fleming's husband. Under the circumstances, we think it was sufficiently established that Margaret Fleming was the widow of the patentee of the land, and that her daughter, Nellie, was the only heir of said deceased patentee. The plaintiff, then, must be held to have acquired all the interest that the widow and heir of the patentee had in the land at the time they deeded to him.

II. One of the conveyances in the defendant's chain of title was a deed from Byam to Hudson. The defendant offered in evidence a certified copy of said deed. The plaintiff objected to it because the certificate of acknowledgment purported to be made by a notary public, and the same was not attested by any seal. The defendant's claim to the one-half interest in the land was bottomed solely on the Johnston tax title and various mesne conveyances to the defendant. If the defendant failed to thus show title in himself, he had no defense to the plaintiff's action. Hence it becomes material to determine whether the certified copy of the Byam deed was competent to go in evidence without a seal of the notary who purported to have taken the acknowledgment. It was held in *Tunis v. Withrow*, 10 Iowa, 308, "that the official acts of a notary public should be authenticated by seal and signature, and that an affidavit is not proved to have been made unless the jurat is authenticated by both seal and signature." In *Rindskoff v. Malone*, 9 Iowa, 542, it was held a protest by a notary public which lacked a seal was not admissible in evidence. And it has been held that a deposition will be sup-

2. DEED: acknowledgment: seal of notary wanting: evidence.

pressed when it is taken by a notary public, and there
is no impression of his seal. *Stephens v. Williams*, 46
Iowa, 540.   See *Neese v. Insurance Co.*, 55 Iowa, 604.
If it is necessary that a notary's signature and certifi-
cate be authenticated by a seal in such cases, surely it
is essential that his certificate of acknowledgment to a
deed should be thus authenticated.   Nor is this defect
in the acknowledgment made good by the curative
acts.   The deed in question was executed after the
passage of the curative act of the Thirteenth General
Assembly, which related to acknowledgments defect-
ive for want of a seal, and the act of 1884 does not
have reference to seals.   We conclude, then, that the
Byam deed was not admissible in evidence.

III.   It is said that the plaintiff, by his pleadings
and claim of title, is estopped from questioning the

**3.** Tax title:
estoppel to
deny: plead-
ing.

defendant's title, except as to the validity
of the tax deed; that he can not now be
heard to complain that, if the tax title
was good, the chain of title based thereon is not com-
plete.   We are satisfied that the defect in the acknowl-
edgment of the Byam deed for want of a seal of the
notary was not in contemplation of the plaintiff when
he drew his pleadings.   In them he claimed: *First*,
under his patent title through the Flemings; *second*,
he claimed the tax title was void; *third*, he claimed in
effect, that, if the tax title should be held good, he
was the owner of the land in controversy under it by
virtue of his deed from Wright.   In other words, while
relying upon his patent title, he proposed, if that
should fail him, and the tax title be held good, to
avail himself of whatever rights he might have obtained
by the Wright purchase.   This, it occurs to us, he had
a right to do, and by so doing he did not recognize the
validity of the tax title, nor necessarily the validity of
the subsequent conveyances thereunder.   We can not
set out the pleadings to show fully why we reach the

conclusion that the plaintiff is not estopped by them or by his claim under them, as they are voluminous. We are satisfied, however, that the plaintiff is not thus estopped from questioning the validity of any of the several conveyances in the tax title chain.

IV.   It does appear to us, however, that the proof was sufficient, as to the defendant's title, to entitle him to contest plaintiff's claim to the land. The defendant testified, without objection, that Hudson was the owner of the land. True, this evidence would not have been competent if objected to.   The plaintiff had a right to insist upon proper evidence of the ownership of Hudson, who received the deed with the defective acknowledgment from Byam, but he did not do so.   We have held that the holder of the patent title who testifies, without objection, that he is the owner of the land, makes a sufficient showing of title in himself to be permitted to question a tax deed under the provisions of the statute heretofore quoted.   *Hintrager v. Kiene*, 62 Iowa, 608.   *Brandirff v. Harrison County*, 50 Iowa, 169.   There would seem to be no good reason why one holding under the tax title should not be placed upon the same footing.   There was sufficient evidence, then, of the defendant's title to a one-half interest in the land to entitle him to contest the plaintiff's claim and title.   Incidentally it may be said that Hudson, and those claiming under him, have redeemed the land from tax sales, and have paid the taxes thereon for about fifteen years.

V.   In the statement of this case we referred somewhat in detail to several of the grounds on which the plaintiff bases the claim that the tax title under which the defendant claims was void.   We need not, in view of our disposition of the case, discuss the validity of the tax title.   One of the grounds urged by the defendant

*Marginal notes:*

4. ——: adverse claims under; proof of ownership.

5. ——: action to set aside: laches defeating.

against the plaintiff's recovery is that the patent title owners have been guilty of such laches as should estop them from recovering. If this claim is well founded, it disposes of the case. Aside from the taking possession and improvement of the land in controversy, the facts in this case are substantially like those in the case of *Mathews v. Culbertson*, 83 Iowa, 434. See, also, *Hewitt v. Morgan*, *post*, 468. The plaintiff in the case at bar testifies that when he purchased the land he had no notice or knowledge that the defendant made any claim thereto. It may be conceded that he personally had no such notice or knowledge. But the evidence shows, without conflict, that the plaintiff was a member of the firm of Pitts & Kessey; that said firm was engaged in banking and real estate business; that the title to land purchased by the firm was for convenience taken in the individual names of the members of the firm, sometimes in the name of Mr. Pitts, and at other times in the name of Mr. Kessey. It appears, also, that the correspondence touching the purchase of the land from Mrs. Fleming and her daughter was signed in the firm name, and some of the correspondence relating to the purchase of the Wright title was conducted in the firm name. The evidence tends to show that the purchase of this land was made by the firm of Pitts & Kessey, and the title taken in the plaintiff's name for convenience. Mr. Kessey, the other member of the firm, did not testify in the case. It is nowhere shown that at and prior to the purchase of this land, he was not fully acquainted with the claims of the defendant and his equities. Under these circumstances it can not be said that the plaintiff has shown himself to be an innocent purchaser.

July 4, 1860, John Fleming received a patent for this land, and, though he lived for twenty years thereafter, he appears to have paid little attention to the land. It was not until 1886 that the plaintiff obtained

his deed from Mrs. Fleming and her daughter, and in October, 1887, almost twenty years after the land was sold at tax sale, this action was commenced. It does not appear that the fee title holders, either before or after John Fleming's death, and prior to the plaintiff's purchase in 1886, ever concerned themselves about the land. The Flemings, during the twenty-six years they held the title, paid no taxes, so far as we can discover; certainly not for over one or two years. Mrs. Fleming testifies: "No one came to see me about the sale of this land at or prior to the sale [to Pitts] except Mr. Pitts." No excuse is made for this seeming abandonment of the land by the Flemings. If the tax deed was void, it was a fact as apparent from the records fifteen or eighteen years ago as now. For almost twenty years the public records of Sioux county had indicated that the land in question was held by a title adverse to the Flemings, and proper inquiry on their part would have disclosed the condition of the tax title, so far as the records of the county were concerned. They were negligent in not asserting their rights. They left the burdens of the government to be discharged by others, and after almost twenty years had elapsed, and after those holding under the tax title had expended much money in the payment of taxes, the patent title holders, through the agency of the plaintiff, first assert a claim to the land as against the tax title holders.

It is said that the plaintiff, since his purchase of the land, has been diligent in asserting his rights. That may be conceded, but the laches of his grantors furnish ample reason why plaintiff should not recover. He took the title charged with all the defects pertaining thereto in the hands of his grantors. Their neglect and abandonment of the land for almost twenty years can not be cured by his subsequent activity for one or two years in asserting his rights. When the defend-

.ant purchased the land he had no knowledge that any-one was asserting a claim to it. He was not cognizant of any fraud connected with the tax sale proceedings, or in the execution of the deed based thereon. The tax deed to Gurley, through whom the defendant's title comes, was regular on its face. There was nothing in connection with the defendant's purchase which should have caused him to doubt his title. He had no knowledge of the claimed illegalities until after this suit was commenced. He procured an abstract of title before taking a deed for the land, which showed title in his grantor. He was advised by counsel that the title was good. The defendant was an innocent purchaser for value.

We need not enter into a discussion of the law and its application to the acts of the fee title holder. That is fully considered in *Mathews v. Culbertson, supra.* We hold that the holders of the patent title have been guilty of such laches that they should be held barred from recovering. They are not entitled to relief in a court of equity and conscience.

The questions considered are decisive of the case, and the judgment below must be REVERSED.