Argued May 3, decided June 8, 1909.

## RAFFERTY v. DAVIS.

[102 Pac. 305.]

TAXATION—SALE FOR NONPAYMENT OF TAX—EVIDENCE AS TO VALIDITY.

1. One who claims as assignee of a certificate of a sale of property for nonpayment of taxes made to the county, and not by certificate or deed made to himself as a direct purchaser, has the burden of showing every requisite of a valid sale or of bringing himself within the provisions of some valid curative statute, and must prove advertisement for the period required by law.

TAXATION—SALE FOR NONPAYMENT OF TAX—NOTICE OF SALE—PROOF OF PUBLICATION.

2. Under a statute requiring that the affidavit of publication of notice of sale for taxes shall be made by the printer, his foreman, or principal clerk, an affidavit by one who styled himself "Foreman of the Eastern Oregon Republican" is insufficient, where there is nothing to show that the person making the affidavit was the foreman of the printer, or what department of the work he was foreman of.

TAXATION—SALE—NOTICE—PUBLICATION—PROOF.

3. Where the affidavit to prove publication of a notice of a tax sale is sworn to before a notary who fails to attach his official seal, the affidavit is worthless.

TAXATION—SALE FOR NONPAYMENT OF TAX—PUBLICATION OF NOTICE—CURATIVE ACT.

4. There can be no valid sale of land for nonpayment of taxes where there is no valid advertisement of the sale, and it is not within the power of the legislature, by a curative act, to avoid such defect, and thereby take one person's property and give it to another.

ABATEMENT AND REVIVAL—MATTER IN BAR AND ABATEMENT—ORDER OF PLEADING—WAIVER.

5. In an action by a landowner to recover lands held under a tax title, the defense that no tender of taxes paid has been made by plaintiff, comes too late after pleading in bar, as the plea in bar waives the matter in abatement.

TAXATION—ACTION TO TRY TITLE—MEASURE OF DAMAGES—INJURIES TO PROPERTY—DETENTION FOR LOSS OR USE.

6. The measure of damages to a landowner on recovering possession from one who holds under a void tax title, is the rental value of the land as improved by the purchaser, deducting therefrom the reasonable market value of any permanent improvements placed on the land by the purchaser.

From Union: JOHN W. KNOWLES, Judge.

Statement by MR. JUSTICE MCBRIDE.

This is an action in ejectment brought by Rachel J. Rafferty, an insane person, by A. D. Buzzard, her guardian, against A. B. Davis to recover certain lands in Union County.

The complaint alleges that plaintiff was on the 22d day of April, 1896, duly declared insane by the county court of Union County, and committed to the Oregon State Insane Asylum; that on September 24, 1907, A. D. Buzzard was duly appointed guardian; that at all dates before mentioned, and up to the commencement of this action, plaintiff was the owner in fee and entitled to the possession of the demanded premises; that for more than six years defendant has been, and now is, wrongfully and unlawfully in possession of the demanded premises, using and occupying the same; and that the reasonable value of such use and occupancy is $150 per year. Plaintiff prays judgment for the property and the sum of $900 damages.

. Defendant answered, admitting the allegations as to the insanity of plaintiff and the appointment of her guardian, and denying generally every other allegation in the complaint, except as otherwise alleged in the answer. Defendant makes two further and separate defenses: (1) That during the year 1895 plaintiff, under the name of Rachel Rafferty, was the owner of the record title to the demanded premises; that they were regularly and legally assessed to her by the assessor of Union County, Oregon, for the year 1895, and the taxes thereon for that year were duly and regularly levied by the county court; that such taxes were never paid, but became delinquent, and were extended upon the delinquent tax roll of such county, with the costs charged thereon as delinquent, and, as such, were so returned by the sheriff; that thereafter the delinquent tax roll was returned to the sheriff with a warrant attached thereto, in due form, commanding him to make such taxes and costs by levy and sale of the lands; that thereafter the sheriff levied upon the lands, and duly and regularly advertised and offered them for sale at public auction, and duly and regularly sold the same to Union County on the 26th of February, 1897, for the

sum of $13.70, that being the highest sum bid; that there has been no redemption of such lands, and that the time for redeeming them has long since expired; that on the 16th of August, 1899, Union County, acting through its board of county commissioners, in consideration of the sum of $13.70, duly assigned, transferrea, and set over, and caused to be assigned, transferred, and set over, its certificate of sale of the lands issued to it as purchaser at the tax sale, and authorized defendant to take and hold possession thereof under the certificate and assignment, and that he now holds possession thereunder; that by virtue of the facts aforesaid, Union County became the owner of the legal title to such lands in trust for defendant on July 1, 1901, and defendant has been at all times, and now is, the equitable owner and entitled to the possession of the same. (2) A repetition of the first answer, and further alleging the regular payment of taxes to 1907, amounting in all to $76.98, and that plaintiff has never tendered, paid, or offered to pay the sum or any part thereof into the court with her complaint or otherwise. (3) Repetition of the first answer, and also alleging that in 1899 the premises, when defendant entered thereon, were wild, uninclosed, unimproved, rocky, and hilly, and without running water, and of no value, except for pasture purposes when inclosed with adjacent lands containing water; that since entering on the lands defendant has in good faith placed permanent improvements thereon, consisting of a mile of good substantial fence, inclosing the land, and of the value of $200. The reply consists of a general denial.

AFFIRMED.

For appellant there was a brief over the names of *Mr. Lewis J. Davis* and *Mr. Thomas H. Crawford*, with an oral argument by *Mr. Crawford*.

For respondent there was a brief and an oral argument by *Mr. Daniel W. Sheahan*.

MR. JUSTICE MCBRIDE delivered the opinion of the court.

1. The plaintiff was the owner of the demanded premises in 1895, when the assessment or attempted assessment was made. The description, while not very definite, was perhaps sufficient to escape the censure of being entirely void. We may concede, therefore, without deciding, for the purposes of this opinion, that the land was properly described and listed for the purpose of taxation. The tax sale in question and the proceedings under it took place before the enactment of the statute of 1901 (Laws 1901, p. 242), and are to be considered in view of the laws in relation to assessments and taxation as set forth in chapter 17, 2 Hill's Ann. Laws, except as subsequent curative statutes may have affected the laws in force before 1901, and also in view of the statute of 1893 (Laws 1893, p. 28), authorizing the county judge to bid in property offered for sale for delinquent taxes. The defendant, claiming under the assignment of a certificate of sale made to the county, and not by the certificate or deed made to himself as a direct purchaser, has the burden cast upon himself of showing every requisite of a valid sale, or of bringing himself within the provisions of some valid curative statute. *Ayers* v. *Lund,* 49 Or. 303 (89 Pac. 806: 124 Am. St. Rep. 1046), and cases there cited. To have been a valid sale, there must have been proof of advertisement for the period required by law.

2. The only proof offered on this subject was the affidavit of M. F. Davis, who styled himself "Foreman of the Eastern Oregon Republican." The law respecting publication of notices requires that the affidavit of publication shall be made by the printer, his foreman, or principal clerk. There is nothing to show that Davis was foreman of the printer, or, in fact, to show what department of the work he was foreman of.

3. In addition to this, the affidavit professes to be sworn to before M. F. Davis, notary public, but there is

no notarial seal attached, and, under such circumstances, the affidavit is worthless. 29 Cyc. 1096, 1097; *Tunis* v. *Withrow,* 10 Iowa, 305 (77 Am. Dec. 117) ; *Stephens* v. *Williams,*. 46 Iowa, 540; *Pitts* v. *Seavey,* 88 Iowa, 336 (55 N. W. 480).

4. If there was no valid advertisement, there could be no valid sale, and therefore no title ever passed, and it is not in the power of the legislature, under the pretense of a curative act, to take one person's property and give it to another. The whole proceedings from the assessment to the final sale are more or less defective and irregular, the officers seeming to proceed upon the theory that all that was necessary in the premises was to come somewhere within gunshot range of the statutes; but it is not necessary to notice or point out these defects, those we have already mentioned being sufficient in our judgment to render the sale invalid and incapable of being made valid by any curative statute.

5. The facts disclosed in this very case furnish abundant justification for the strictness required by the courts in respect to tax sales. Here the plaintiff is a woman, who during all the period allowed by law for the redemption of her property was confined in an insane asylum without a guardian, and while so confined the defendant, who owned adjoining property, purchased the county's certificate of sale, and now seeks to hold her property. In view of the probable occurrence of just such cases, a strict compliance with the tax laws ought to be required. The defense that no tender of taxes paid by plaintiff was made in this case comes too late. It was matter in abatement of this action. A failure to tender back taxes would not defeat plaintiff's right to recover. It would only abate her action and require her to make the tender before she could begin her action again. Having plead matter in bar, the matter in abatement is deemed waived. *Hopwood* v. *Patterson,* 2 Or. 49; *Oregon Central R. R. Co.* v. *Scoggin,* 3 Or. 161.

6. Exception was also taken to the instruction of the court in regard to the measure of damages. The court, after instructing the jury that defendant had failed to prove any title or right of possession of the demanded premises, and directing a verdict in favor of plaintiff, said:

"The only question for you to consider, in making up your verdict, is the amount of damages which plaintiff is entitled to for defendant's withholding the said land during the six years prior to the commencement of this action, which may be offset to the extent of the reasonable market value of any permanent improvements, which may have been placed upon the land by the defendant, during the time he has had possession of it. (2) I instruct you that the plaintiff's measure of damages for the withholding of said land by the defendant is the reasonable rental value thereof for the purpose for which said land is adapted during the time extending back six years immediately prior to the commencement of this action."

The learned counsel for appellant contend that the true measure of damages is the rental value of the land in the condition in which appellant found it, and not the value that it acquired by reason of the fencing placed upon it by him. The evidence shows that defendant had fenced it at a total cost of about $200; that with such fence its rental value was not to exceed $50 per year, and without it the rental value was little or nothing. We may add that there is sufficient in the record to show that appellant's claim to the premises was *bona fide* and under color of title.

After careful review of the authorities, we are of the opinion that the rule adopted by the court below is the correct measure of damages in cases of this kind. We are not prepared to say that in cases where city lots have been built upon, and the rental value has arisen to a great extent from the actual occupation of the structure built rather than the land occupied, a different rule might not obtain, though this is doubtful. But in cases like the

present one, where the improvements are merely to enable
the occupant to enjoy the natural resources of the land,
we think the great weight of authority is in favor of the
view that plaintiff is entitled to recover the rental value
of the land, as improved, deducting therefrom the value of
the improvement. As this question in its present form has
not been before this court previously, we will consider
some of the authorities. The case of *Southern Cotton
Oil Co.* v. *Henshaw,* 89 Ala. 448 (7 South. 760), cited
by appellant, is very instructive. This was an action to
recover land and damages for withholding. The rental
value, when defendant acquired the land, was $10 per
year. He erected permanent improvements of the value
of $100,000, and the rental value of the land was $15,000
annually. Defendant was allowed nothing for improve-
ments, and the increased rental was charged against him.
The Supreme Court held this error. They say: "How
shall such rents be computed? Shall it be on the land
before or after the improvements?" They then cite the
equity case of *Dozier* v. *Mitchell,* 65 Ala. 511, in which
a *bona fide* purchaser was charged with the rents as the
property came into his hands, and not upon the increased
value caused by his improvements, and continue: "The
same rule is held also to apply to actions at law, accord-
ing to what we deem to be the more just view, especially
where no allowance has been made the defendant for
the value of his improvements. In *Jackson* v. *Loomis,*
4 Cow. (N. Y.) 168 (15 Am. Dec. 347), a leading case
on this subject, which was trespass for mesne profits,
a *bona fide* purchaser was allowed the value of permanent
improvements made to the extent of the rents and profits
due the plaintiff; but it was said by Mr. Chief Justice
SAVAGE: 'Most clearly the defendant should not be com-
pelled to pay an enhanced rent in consequence of his own
improvements.' " The opinion then cites decisions of
Indiana and Wisconsin to the same effect, and continues:
"In Mississippi it is held that the defendant in posses-

sion is not to be charged with increased rent by reason of improvements made by him, and for which he has been allowed no compensation. *Phillips* v. *Chamberlain,* 61 Miss. 740; *Tatum* v. *McClellan,* 56 Miss. 352. But a distinction seems to be made where the defendant has obtained compensation for such improvements, and the plaintiff recovers against him in ejectment. *Miller* v. *Ingram,* 56 Miss. 510. The Supreme Court of Texas, in *Evetts* v. *Tendick,* 44 Tex. 570, held the defendant liable for rents on the land in its improved condition, following former decisions, but observed that the contrary rule was the more equitable. The more just rule, and the one sustained by a preponderance of authority, is believed to be that the *bona fide* occupant should not be charged with income from his own improvements, where he is so situated as not to be entitled to claim allowance for his expenditures in erecting them. * * That is this case, and we need not at present extend the principle any further." The cases cited from Iowa, Indiana, and Wisconsin are under very elaborate "occupying claimants" acts, which do not obtain in this State, but we think the law, so far as it applies to the statutes of our State, is fully and correctly stated in the opinion in *Southern Cotton Oil Co.* v. *Henshaw,* 89 Ala. 448 (7 South. 760). The American and English Encyclopedia of Law states the general rule as follows:

"When the occupant of land has made improvements upon it, and by so doing increased its annual value, it is a delicate question to decide what amount shall be charged him as mesne profits, since it would be unjust to demand of him profits which arose from his own improvements. The most satisfactory rule that has been evolved is that, when the occupant is allowed the prime cost of his improvements when made, he is to pay for the use and occupation of the land at its improved value." 10 Am. & Eng. Enc. Law (2 ed.) 546.

In Sutherland, Damages, the rule is thus stated:

"The improvements should be estimated in favor of defendant at such amount as they add to the market

value of the premises. The claim for them may be co-extensive in time with the allowance of rents and profits which the improvements contributed to produce. In other words, their value is not to be limited to their worth in cash at the time of the trial, but by the benefit they have conferred upon the plaintiff, whether by adding to the worth of the land at the time of its recovery, or, retrospectively, by augmenting the amount he may recover as mesne profits." 3 Sutherland, Dam. § 999.

Warville states the rule as follows:

"In fixing the amount of the rental value, the basis should be the condition of the land as improved by the defendant, if it has been so improved, where the defendant is entitled to the value of his improvements." Warville, Eject., § 540.

In *Dungan* v. *Von Puhl*, 8 Iowa 263, the court states the rule to be that, where the defendant is allowed the value for his improvements, he is liable for the increased rental value. The court says: "In the early settlement of the western country, the use and occupation of unimproved prairie or timber land would, as a general rule, be considered as of no value. The annual rents and profits of such land would be considered nothing. But if the land is inclosed, and put in a state suitable for cultivation and the raising of crops, not only is a value added to the land above the mere cost or value of the improvements put upon it, but the occupant may reasonably be charged a fair sum for the use and occupation of the land in its improved state, without having the right to complain that he is required to pay rent for improvements made by himself. He pays rent, not upon such improvements, but upon land worth more for the purpose for which he uses it by reason of its being brought into a state fit for cultivation. The owner is entitled to rents and profits according to the value of the land for the purpose to which it is devoted by the occupant. The occupant is to pay what the use of the land is worth to him. In such a rule we think there will

nothing be found inequitable. It does not require the occupant to pay rent on improvements made by himself. But it does require him to pay rent according to the increased adaptation of the land for the purpose for which it is used, though such adaptation has been brought about by the occupant's own labor. It is difficult to lay down a rule that will work alike fairly and equitably in all cases—of land improved by inclosure, and by being rendered suitable for the raising of crops and of an unimproved lot in a town or city. All that we can say. is that the occupant is to be charged for the rents, whatever the use of the property has been worth to him, whether it be prairie land or a vacant city lot. While he has the right to claim payment for the value of his improvements, he cannot complain of being held to pay as rents and profits to the owner all that the property has been worth to him, nor in being held to the rule that the value of such rents may be increased by the labor he has placed upon it." The measure of damages stated by the court below is fully upheld by the authorities cited, and we think that the amount allowed by the jury was very moderate. Appellant was allowed the prime cost of an eight-year-old fence, and the plaintiff recovered $165 damages, which, taking all the evidence into consideration, was a very moderate verdict.

Seeing no errors in the proceedings below, the judgment is affirmed.    AFFIRMED.