### ACTON v. REED et al.

(Supreme Court, Appellate Division, First Department. May 5, 1905.)

1. NEGLIGENCE—WHAT CONSTITUTES—NONCOMPLIANCE WITH BUILDING CODE.
   The failure of a hotel proprietor to comply with section 102, p. 65, of the building code of the city of New York, requiring buildings exceeding 100 feet in height to be provided with standpipes running from cellar to roof, is prima facie negligence, and gives a cause of action to any one who is entitled to have the statute complied with, and who is injured by its nonobservance.

2. INNKEEPERS—INJURY TO GUESTS—NEGLIGENCE—PROXIMATE CAUSE.
   Noncompliance by a hotel proprietor with section 102, p. 65, of the building code of the city of New York, requiring buildings exceeding 100 feet in height to be provided with standpipes, with outlets and hose attached thereto on each floor, was not actionable negligence with respect to a guest in the hotel who was suffocated by smoke, where it was shown by the officers of the fire department that the standpipes would not have been used by the department, had the building been provided with them, and there was no showing that they were or could have been used before the fire department arrived, so that their absence in no way contributed to the suffocation of the guest.

3. SAME—FAILURE TO POST DIAGRAMS—EVIDENCE—SUFFICIENCY.
   In an action against a hotel keeper for the death by suffocation of a guest, evidence *held* insufficient to show noncompliance by defendant with Greater New York Charter, § 762 (Laws 1897, p. 263, c. 378), requiring diagrams showing exits, halls, stairways, and fire escapes to be posted in each room.

4. SAME—PROXIMATE CAUSE.
   The failure of a hotel keeper to post diagrams showing exits and fire escapes in every room, as required by Greater New York Charter, § 762 (Laws 1897, p. 263, c. 378), cannot be deemed to have caused the death by suffocation of a guest who had lived in the hotel for about nine months, and who was familiar with the stairways and exits.

5. SAME—LOCKING OF DOORS—PROXIMATE CAUSE.

 The fact that a door on one of the stairways of a hotel was locked at the time of a fire was not actionable negligence with respect to a guest who was suffocated at the time of the fire, where such guest made no attempt to descend the stairway which was blocked by the locked door, but successfully descended to a lower floor by another stairway.

 Appeal from Trial Term, New York County.

 Action by Merta Acton, as administratrix of Norman Acton, deceased, against Frederick A. Reed and another. From a judgment for plaintiff, and from an order denying a new trial, defendants appeal. Reversed.

 Argued before VAN BRUNT, P. J., and McLAUGHLIN, PATTERSON, INGRAHAM, and LAUGHLIN, JJ.

 Frank S. Black, for appellants.
 Henry L. Scheuerman, for respondent.

 McLAUGHLIN, J. On the 22d of February, 1902, Norman Acton, the husband of the plaintiff, while a guest at the defendants' hotel, lost his life as the result of a fire which occurred therein; and this action was brought to recover the damages alleged to have been sustained by the plaintiff, on the ground that his death was due to the negligence of the defendants. She has had a recovery, and the defendants appeal.

 The deceased had been a guest at the hotel from May preceding the time the fire occurred, and, as such, occupied a room on the sixth floor. His death was due to suffocation by smoke while endeavoring to escape from the burning building. The principal acts of negligence claimed to have been established at the trial, and by reason of which the recovery is sought to be sustained, are that a door upon the sixth floor, leading to an interior stairway, was locked at the time of the fire; that there were no diagrams in the room occupied by the deceased, indicating how to get out of the building; and that there were no standpipes in the building, as required by chapter 466, p. 657, § 3, of the Laws of 1901, and the building code of the city of New York, or other proper appliances for extinguishing a fire.

 There is little dispute between the parties as to the facts leading up to and immediately connected with, the decedent's death, though the cause or origin of the fire is involved in much doubt. Shortly after midnight on the 22d of February, 1902, the armory of the Seventy-First Regiment, N. G. S. N. Y., situated on the opposite side of the street from the hotel in question, was discovered to be on fire. There was a high wind at the time, and the sparks and cinders were carried in the direction of the hotel. The defendants, apparently appreciating the liability of the hotel taking fire, aroused the guests, cautioned them about keeping the windows in their rooms closed, and sent persons to the various floors and roof, notwithstanding which, about an hour after the fire started in the armory, one was discovered at the foot of an elevator shaft in the hotel; and before it could be extinguished it had extended up the shaft, by

reason of which, or the smoke, or both, several persons, including the intestate, lost their lives.

The evidence, so far as it relates to the deceased, is not very satisfactory. It appears, however, from the testimony of the plaintiff's witness Knott, who was an assistant housekeeper in the hotel, and occupied a room next to the one occupied by the deceased, that she was aroused by the housekeeper between half past 1 and 2 o'clock; that she and the housekeeper went to each room on the sixth floor of the hotel, aroused the guests therein, informed them of the fire raging in the armory, and told them to keep the windows of their rooms closed, so that the sparks could not enter; that she remembered knocking on the door of the deceased's room, and that after she got through on the sixth floor she went to the other floors, doing the same thing; that she subsequently went back to the sixth floor, and about that time discovered that the elevator shaft situated in the front of the building was on fire; that she then went to her own room to get a coat; that as she came out of her room she saw the deceased come out of his room, fully dressed, with a garment which she though was an overcoat on his arm; that she saw him lock the door to his room, and then the two, with other guests, passed down a rear stairway to the fifth floor; and that was the last she saw of him. He was subsequently discovered in a temporary hospital on the ground floor of the hotel in an unconscious condition, from where he was taken to a hospital, and died shortly after.

Taking up the alleged negligent acts of the defendants, and considering them in the inverse order named, it appears that the hotel was over 100 feet in height, measuring from the curb level at the center of the front of the building to the top of the highest point of the roof beams, and that this, under section 6, p. 5, of the building code of the city of New York, was the proper place to take the measurement. And section 102, p. 65, of the same code, required that a building which exceeds 100 feet in height shall be provided with a 4-inch standpipe, running from cellar to roof, with one two-way, 3-inch Siamese connection to be placed on the street above the curb level, and with one 2½-inch outlet, with hose attached thereto, on each floor, placed as near the stairs as practicable. The building did not have the standpipes required. The defendants therefore had failed to comply with the statute, and were prima facie negligent, if the omission to supply them contributed in any way to the decedent's death. The statute, by reason of the height of the building, imposed a duty on the defendants to erect the standpipes, and their omission to do so gave a cause of action in favor of any one entitled to its observance and injured by the breach. Willy v. Mulledy, 78 N. Y. 310, 34 Am. Rep. 536; Pauley v. S. C. & L. Co., 131 N. Y. 90, 29 N. E. 999, 15 L. R. A. 194; Huda v. American Glucose Co., 154 N. Y. 474, 48 N. E. 897, 40 L. R. A. 411. The trouble, however, with the plaintiff's case in this respect, is that the proof is overwhelming that, if there had been standpipes, they could not and would not have been used, and therefore the omission to have them in no way contributed to the decedent's

death. The chief of the fire department, who was present at the fire, testified that "had there been standpipes in this building at the time of the fire, I would not have used them." The deputy chief testified, "I would not have been able to use standpipes for this fire if they had been there." And a chief of battalion testified, "I did not look for any standpipes, and would not have used them if they had been there." The testimony of these witnesses as to standpipes was not only uncontradicted, but none was offered to the effect that, if there had been standpipes, the same could or would have been used prior to the arrival of the firemen; and to permit the jury to predicate a finding of negligence upon the absence of such pipes was simply to permit them to invade the field of speculation, and base a verdict upon a mere conjecture, rather than upon evidence, which the law requires. As to the fire extinguishers, a fair consideration of all the evidence bearing on that subject tended to show there was an adequate supply throughout the building, and that the same were in proper condition. Substantially the only evidence to the contrary was the testimony of the witness Coyle, who stated that, when he attempted to use one of them on the second floor, he was unable to do so, by reason of its corroded condition, until he had kicked out the bottom. But when his whole testimony is considered, it is apparent that the extinguisher failed to work, not by reason of its defective condition, but because the witness did not know how to operate it.

As to the diagrams, it is claimed that the defendants had failed to comply with section 762 of the Greater New York charter (Laws 1897, p. 263, c. 378), which provides that in a hotel there shall be posted in every room "a card, upon which shall be printed a diagram showing the exits, halls, stairways, elevators and fire escapes, and in the halls and passageways, signs shall be posted indicating the location of the stairs and fire escapes." A fair consideration of all the testimony does not tend to sustain this claim. On the contrary, it appears from the testimony of several witnesses that diagrams were posted in the rooms, halls, and elevators; and the housekeeper testified it was her duty to see they were posted in the rooms, and, when torn down, to replace them. But in this connection it must be borne in mind that the deceased had been a guest of the hotel since the preceding May, from which time he had occupied the room in which he was on the night of the fire. He had thus an opportunity to, and from the testimony of the witness Pears it is clear he had familiarized himself with the stairways and exits; having stated to him how he would get out in case of a fire. The fact that after he came out of his room he proceeded by way of the stairs to the fifth floor indicates that he knew how to get out of the building, so that the absence of a diagram in his room in no way could be said to have been the cause of his death, even if the evidence would have justified a finding to that effect, which it did not, inasmuch as substantially all there is upon that subject is the testimony of one witness to the effect that some time previous to the fire he had several times called upon the deceased, and did not ob-

serve a diagram in his room; testimony simply negative in character, which did not overcome the other testimony to the effect that there were diagrams in the rooms.

There was an interior stairway located near the deceased's room, which led from the sixth floor to the floors below, and testimony was offered to the effect that, when the fire broke out, the door leading to this stairway was locked. Much testimony was offered on the part of the defendants to the effect that door was not locked, but at the conclusion of the trial a question was presented in this respect for the jury. It was of no importance, however, whether it was locked or not, inasmuch as testimony had been offered, which was uncontradicted, to the effect that the deceased came out of his room, locked the door, and proceeded by another stairway to the floor below; that he never tried to descend by the interior stairway; and therefore, even if it be conceded that it was locked, it in no way impeded the deceased's exit from the building. And bearing upon this subject, at the conclusion of the trial the court was asked to charge that if the jury believed the deceased, "after locking his door, proceeded directly to the main stairway at the northwest corner of the building, and made no attempt to descend by any other stairway, then and in such event the question of the alleged locking of the door or doors of the interior stairways leading from the sixth floor has no bearing upon this case, and cannot be considered by the jury as any evidence of negligence on the part of these defendants, which caused or contributed to the death of said Acton." The instruction should have been given, and the exception to the refusal to charge as requested was well taken. The error in refusing to give the instruction thus requested is apparent when such request is read in connection with the main charge, in which the court stated that, in determining whether the defendants were negligent or not, the jury would take into consideration the testimony "as to whether or not the door leading to the inclosed stairway on the sixth floor was locked." Manifestly, if the deceased succeeded, by means of one of the main stairways, in reaching the fifth floor, it was entirely immaterial whether the door leading to the interior stairway on the sixth floor was locked or not, and the jury should have been so told.

Other errors are alleged, but it seems unnecessary to here consider them, inasmuch as there must be a new trial by reason of the errors already pointed out.

The judgment and order appealed from, therefore, must be reversed, and a new trial ordered, with costs to appellants to abide the event.

PATTERSON, INGRAHAM, and LAUGHLIN, JJ., concur.
VAN BRUNT, P. J., concurs in result.