Argued August 15, decided November 26, 1912.

## SCHOLL v. BELCHER.*

(127 Pac. 968.)

Parties—Objection—Mode.

1. Under Section 72, L. O. L., providing that if no objection be taken, either by demurrer or answer, the defendant shall be deemed to have waived the same, excepting only the objection to the jurisdiction, and that the complaint did not state a cause of action, an objection that a plaintiff, suing as administrator for the wrongful death of his decedent, was not legally appointed cannot be properly raised by an application, made at the close of plaintiff's case, for leave to file an amended answer setting out such objection, though Section 71, L. O. L., provides that objection may be taken by answer to the plaintiff's want of legal

*As to presumption of negligence of innkeeper from injury to guest or his property, see note in 20 L. R. A. (N. S.) 1027.

Doctrine of last clear chance as distinguished from rule that contributory negligence is not a defense against a wanton or willful injury, see note in 21 L. R. A. (N. S.) 427.          REPORTER.

capacity to sue, where such defect does not appear on the face of the complaint.

**Abatement and Revival—Pleading in Abatement and in Bar.**

2. In an administrator's action for the wrongful death of his decedent, an answer which, in addition to denying plaintiff's principal allegation and setting up affirmative defenses, alleges want of legal capacity in plaintiff to sue is defective in that it joins a matter in abatement to a plea in bar.

**Innkeepers—Injury to Guest—Complaint—Sufficiency.**

3. Where the complaint, in an action against an innkeeper for the wrongful death of a guest from falling off the hotel porch and subsequent exposure, alleged merely that, on account of the lack of a railing and lights on the porch, decedent fell and was injured, and that, if the porch had been supplied with railing and lights, decedent would not have fallen or been injured, it was defective for failure to state that decedent fell from the porch from a point where he had a right to be or was invited to be, or in what manner the absence of a railing contributed to the accident.

**Innkeepers—Injury to Guest—Instruction.**

4. Where, in an action against an innkeeper for the wrongful death of a guest from falling off the hotel porch and subsequent exposure, the evidence put in issue whether the absence of a railing on the porch contributed proximately to the injury, an instruction that, if a reasonably prudent man conducting a like hotel at that point would have had a railing around the porch, and defendant had none there, defendant was negligent was defective in that it did not include the condition that the absence of railing was the proximate cause of the injury.

**Trial—Injury to Guest—Refusal of Instruction—Negligence.**

5. Where, in an action against an innkeeper for the wrongful death of a guest from falling from a hotel porch and subsequent exposure, there was evidence that the porch was equipped with substantial railings, and that decedent was hurt as the result of his own negligence, and that his injury was unknown to defendant, it was error to refuse to instruct the jury to find for defendant if the accident happened from acts over which defendant had no control, and of which he did not know.

Innkeepers—Injury to Guest—Instruction—Negligence.

6. Where, in an action against an innkeeper for the wrongful death of a guest from falling from the hotel porch and his subsequent exposure after being discovered by the defendant, the evidence raised an issue whether decedent was really hurt when defendant found him, or was merely drunk, or, if then injured, whether defendant might not have reasonably and honestly mistaken his condition for one of intoxication, it was error to instruct that defendant was liable, although deceased was guilty of contributory negligence, if the result of such contributory negligence could have been prevented by defendant's caring for him.

Innkeepers—Duty to Guests.

7. While it is the duty of an innkeeper to take ordinary care to keep his buildings and premises reasonably safe for the use of his guests, he is not an insurer of the safety of his guests, and is under no obligation to exercise forcible control over them to prevent their exposing themselves to danger.

Negligence—Contributory Negligence—Willful Injury.

8. Although one's own negligence has brought him into danger, he cannot be willfully or wantonly hurt by another with impunity.

Innkeepers—Injury to Guest—Contributory Negligence.

9. Where a hotel guest, who met death by falling off the hotel porch and subsequent exposure, went outside the hotel at an unreasonable hour of the night without defendant's knowledge, and fell while intoxicated, and after the injury did not notify or warn defendant thereof, his own negligence was the proximate cause of his death.

Negligence—Contributory Negligence—"Last Clear Chance Doctrine."

10. "The last clear chance doctrine" arises where plaintiff has been negligent in placing himself in a position of danger, but that negligence has spent its force at the time he received an injury owing to the negligence of defendant.

Innkeepers—Injury to Intoxicated Guest—Liability of Innkeeper—Last Clear Chance.

11. Where the death of a hotel guest results from his falling from the hotel porch while voluntarily intoxicated, and from his subsequent exposure after discovery of his situation, but not

of his injury, by the innkeeper, the innkeeper is not liable under the doctrine of the last clear chance for any mere nonfeasance neglect in failing to care for the guest, unless the guest's own negligence shall have then culminated; the acts of an intoxicated man in such a situation being judged by the same standard of conduct as applies to a sober man in a like situation.

From Multnomah:  HENRY E. McGINN, Judge.

Statement by MR. JUSTICE BURNETT.

This is an action by Mary J. Scholl, as administratrix of the estate of Charles Scholl, deceased, against C. T. Belcher.

The complaint contains two counts each nearly identical with the other. It is stated in effect that on February 7, 1910, plaintiff was duly and regularly appointed administrator of the estate of Charles Scholl, deceased, by the county court of Multnomah County, Oregon, and during all the time mentioned in the complaint the defendant was and now is the proprietor and manager of the Collins Springs Hotel at Collins Springs, in the State of Washington. The complaint then goes on to state:

"That on and prior to the 24th day of August, 1908, the deceased, Charles Scholl, was a guest at the Collins Springs Hotel in the State of Washington, and that during said time the said hotel was under the care, control, and management of the defendant, who was and is now the proprietor and manager thereof; and that on the night of the 23rd or the morning of the 24th day of August, 1908, and during the night-time, the particular hour thereof being to the plaintiff unknown, the said Charles Scholl fell from the porch of the said Collins Springs Hotel to the ground, whereby his leg was broken, and he was severely crippled, wounded, and bruised in and upon his arms, shoulders, back, and breast, and injured internally and externally, and rendered unconscious, and was by said defendant allowed to remain and lie on the ground outside of said hotel and near said porch during the remainder of the night, and that said night was very cold at Collins Springs, and the said Charles Scholl was thinly clad and remained so exposed

to the elements during the remainder of the night, and because of his injured condition aforesaid and the resulting weakness therefrom, and because of his inability to help himself, and because of his exposure to the cold during said night, the said Charles Scholl then and there contracted pneumonia, and, because of the said injuries and the sickness so contracted from said exposure as aforesaid, the said Charles Scholl on the 26th day of August, 1908, died in Portland, Multnomah County, Oregon. That the said injuries and death of the said Charles Scholl were caused by the carelessness and negligence of the defendant in the following manner, to wit: That the porch of the said hotel is more than seven feet above the surface of the ground, and because thereof is dangerous, and the said defendant carelessly and negligently failed, neglected, and refused to place and have any railing along and around said porch so as to prevent the said Charles Scholl and his other guests from falling therefrom; and the said night of August 23rd, 1908, and the morning of August 24th, 1908, was very dark, and the said defendant carelessly and negligently failed, neglected, and refused to have any lights upon and around said porch to warn the said Charles Scholl and his other said guests that the same was dangerous on account of its height from the ground, and on account of the lack of said railing and the lack of lights upon and around said porch the said Charles Scholl fell therefrom and was injured and crippled as aforesaid, and if the said porch had been supplied with any railing, or had any lights thereon, the said Charles Scholl would not have fallen therefrom and would not have been crippled, injured, and bruised as aforesaid. That the said defendant, after the said Charles Scholl fell from said porch and became and was crippled, injured, and bruised as aforesaid, was notified of and had knowledge of the condition of the said Charles Scholl, and carelessly and negligently failed and neglected to pick him up and care for him, and carelessly and negligently allowed the said Charles Scholl to remain out during the remainder of the said night, and thereby, by said exposure and neglect, caused the said Charles Scholl to contract pneumonia, and because of all of said careless and negligent acts of the said defendant, and because of the injuries received by the said Charles Scholl by reason

of the said carelessness and negligence of the said defendant, and because of the said sickness and ailment contracted by reason thereof, the said Charles Scholl on the said 26th day of August, 1908, died in Portland, Multnomah County, Oregon."

After alleging that the decedent was 32 years old and was earning wages at $6.00 per day, the plaintiff claims damages in the sum of $7,500. The foregoing quotations are from the first count. The second count is substantially like the first and claims damages in the same sum.

A general demurrer to each of the counts having been overruled, the defendant answered denying each of the allegations in each of the counts except that the defendant admitted that he was the proprietor of the hotel named and that the deceased was staying there. As an affirmative defense the answer alleged, in effect, that the decedent drank intoxicating liquors to such excess while he was staying at the hotel that he became drunk and went out of the building in the latter part of the night after all others on the premises had retired, and by his own carelessness broke his leg and suffered the injuries of which the administratrix complains, all without the knowledge of the defendant, and that, as soon as the defendant discovered that the deceased had sustained his injuries, he at once did everything he possibly could to obtain medical assistance for him and to obtain relief for the decedent. The new matter of the answer was traversed by the reply. A jury trial resulted in a verdict and judgment in favor of the plaintiff, from which the defendant appeals.     REVERSED.

For appellant there was a brief and oral arguments by *Mr. Thomas B. McDevitt* and *Mr. Ed. Mendenhall.*

For respondent there was a brief over the names of *Messrs. Jeffrey & Lenon,* with an oral argument by *Mr. Charles E. Lenon.*

Mr. Justice Burnett delivered the opinion of the court.

Mr. Justice Bean dissenting.

1. It is contended by the defendant that the court ought to have dismissed the action because it appeared in testimony that the decedent had been for a long time prior to his death, and then was, a resident and inhabitant of Marion County, Oregon, and hence that the county court of Multnomah County had no jurisdiction to appoint the plaintiff administratrix of his estate. This question was raised by a motion for nonsuit at the close of the plaintiff's case, by an application to the court for leave to file an amended answer, in which there was added to the allegations and denials of the answer already quoted the averment that the decedent was, at the time of his death, a resident of Marion County, Oregon, which application to file a second amended answer was denied by the court. Under the authority of *Slate's Estate,* 40 Or. 351 (68 Pac. 399), this question might have been made available in behalf of the defendant if it had been urged by a proper plea in abatement. It is provided by Section 68, L. O. L., that the defendant may demur to the complaint within the time required by law to appear and answer when it appears upon the face thereof, among other things, that the plaintiff has not legal capacity to sue. Section 71, L. O. L., says that—

"When any of the matters enumerated in Section 68 do not appear upon the face of the complaint, the objection may be taken by answer."

The rule is laid down in Section 72, L. O. L., that—

"If no objection be taken either by demurrer or answer, the defendant shall be deemed to have waived the same, excepting only the objection to the jurisdiction of the court and the objection that the complaint does not state facts sufficient to constitute a cause of action."

2. If, in truth, on account of the wrongful act or omission of the defendant, the death of the decedent was caused, some administrator of the latter's estate could

maintain an action at law therefor against the defendant, if the deceased himself might have maintained the action had he lived. Section 380, L. O. L. Even if the amended answer tendered had been received and filed, it was defective in this respect because it joins the matter in abatement to the plea in bar. The plea in abatement is tantamount to the defendant's saying to the plaintiff:

"Admitting that your decedent met his death as you state, you have no capacity to bring this suit on account of his residence being in Marion County, whereas your letters of administration were issued by the county court of Multnomah County."

This was joined to the plea in bar, which utterly denies all the statements of the complaint except as noted, as well as alleging new matter in justification. The rule is well established in this State that a plea in abatement is waived by joining it with a plea in bar. *Hopwood* v. *Patterson,* 2 Or. 49; *Fiore* v. *Ladd,* 29 Or. 528 (46 Pac. 144); *Morgan's Estate,* 46 Or. 233 (77 Pac. 608: 78 Pac. 1029); *Rafferty* v. *Davis,* 54 Or. 77 (102 Pac. 305); *Wilson* v. *Wilson,* 26 Or. 251 (38 Pac. 185); *Owings* v. *Turner,* 48 Or. 462 (87 Pac. 160). Under this state of the pleading, the attack upon the plaintiff's representative character can avail the defendant nothing here.

3. The principal testimony on the part of the plaintiff was given by a young lady who was a guest at the hotel at the time of the wrongs complained of. She testified, in substance, that about half-past two o'clock in the morning of August 24th she was awakened by someone calling for help. After listening awhile, she took her lamp and went to the room of the defendant and told him that there was something the matter. He arose and went with her to the rear of the hotel on a porch where they saw some object lying in a roadway below. The defendant inquired, "What is the matter down there?"

and the answer came back from the decedent, who was lying there, "Well, there is a wire on my leg cutting me to the flesh, come down and take it off." The defendant took the lamp and went down where the decedent, as the object proved to be, was lying on the ground and told him to get up and go away. The decedent said, "All right, if I can get away on one. leg I will go." The decedent then attempted to rise and go away, but fell down again, whereupon the defendant looked more closely at him and told him again, "You get away from here or I'll get someone to take you away." The defendant, without touching the decedent or in any way doing anything for him, left him there and returned to the hotel. The young lady also testified that the decedent had on a dark suit of clothes, trousers and coat at least, and that one of his feet was bare. She is somewhat confused in her statements about the railing around the porch, varying all the way from an absolute statement that there was no railing to the other that she does not recollect whether there was any or not. The decedent was discovered next morning lying near a power house, which generates electricity for the hotel, and his leg was then found to be broken below the knee. He was suffering from cold and was delirious. An employee of the defendant procured a stretcher and some blankets, and together with some of the other guests of the hotel carried the decedent into the power house and afterwards took him to the boat landing for the purpose of sending him to Portland for treatment, where he died the next day. Other testimony for the plaintiff tends to show that, when the defendant was notified the following morning that the decedent's leg was broken, he telephoned to different points for a physician, but without success, and afterwards directed that he be taken to the boat and sent to Portland as above stated. On behalf of defendant there was testimony tending to show that plaintiff's intestate was more or

less intoxicated the night of the accident; that his room was found all disarranged, the furniture twisted around, the sheets taken off the bed and stuffed into the water pitcher; that there were three empty whisky bottles found there immediately after the accident; that all of the porches, as well as the stairways, had railings; and that the halls and corridors of the hotel were all lighted with kerosene lamps as soon as the electricity was turned off each night.

The defendant himself testified, in substance, that, on being called by the young lady, he went out and found the plaintiff's intestate lying in the roadway and, inquiring what was the matter, he was told that there was a wire on his leg; that he told him that there was no wire on his leg but to get up and get out of there and not to annoy the people who were asleep at the hotel; that he appeared to have all his clothing on; did not say his leg was broken, and there was nothing about him to indicate to the defendant that he was injured at all, but that he acted like he was drunk; that, after the young lady had retired to her room, the defendant went down to the main floor and watched the man, who got up from the place where he first saw him in the road and went to the power house about 103 feet distant where he sat down on a box and appeared to go to sleep, and, after watching him until about 5 o'clock, he himself retired, and later in the forenoon, when informed by another guest that decedent's leg was broken, he did everything he could for him, telephoning for a physician, and afterwards providing for his transportation to Portland as before stated.

4. Among others, the court gave the following instructions to the jury, to which the defendant excepted:

"If you should find that there was no railing around the porch and that it was not lighted, then you must ask yourselves whether or not a reasonably prudent man, conducting a hotel of like character at that point, would

not have had those preventatives there, and if you find that he would have had them there, and that the defendant did not have them there, there has been a negligent act committed on the part of the defendant."

In this connection it will be remembered that after charging that there was no railing around the porches, and there were no lights to warn the decedent that the porch was dangerous on account of its height from the ground, the complaint charges—

"That, on account of the lack of said railing and the lack of lights upon and around said porch, the said Charles Scholl fell therefrom and was injured and crippled as aforesaid, and if the said porch had been supplied with any railing, or had any lights thereon, the said Charles Scholl would not have fallen therefrom and would not have been crippled, injured, and bruised as aforesaid."

It is not stated that the decedent fell from the porch from a point where he had a right to or was invited to be, or in what manner the absence of railing contributed to the accident. It would have been better if the complaint had stated the facts showing how the absence of the railing produced the injury complained of. The court might have then drawn the conclusion the pleader had urged, to wit, "that the accident happened on account of the absence of the railing." The pleading is open to the criticism made by the case of *Smith* v. *Buttner,* 90 Cal. 95 (27 Pac. 29). In that case the plaintiff was a tenant of the defendant who, while she was residing in the house, caused it to be raised a few feet higher than it was before. The complaint charged that after elevating the house, and while the plaintiff was living in it, the defendant had failed and neglected to provide any safe and proper means of entrance to, or egress from, the house, and by reason of the negligence of the defendant in that respect the plaintiff, in endeavoring to descend from the house to the ground for a proper and lawful

purpose, while in the exercise of due care and diligence, and without any fault or negligence on her part, fell to the ground and dislocated her left wrist and suffered other injuries. The court says: "The negligence consisted simply in failing to provide safe, proper, and suitable means of entrance to or egress from a house, and it is alleged that this negligence caused the plaintiff to fall, but no other fact is averred that shows that such negligence had anything to do with the accident. How did it cause her to fall? * * It it well settled that negligence may be charged in general terms—that is, what was done being stated it is sufficient to say that it was negligently done without stating the particular omission which rendered the act negligent—but it must appear from the facts averred that the negligence caused or contributed to the injury. * * We are not at liberty to suppose that anything gave way through the latent insecurity of the structure, for it is not so alleged. The presumption is therefore that the accident arose from a patent defect, and that the pleader has failed to make a more specific statement, because such a statement would have weakened his case."

Aside from the question of whether or not the pleading is sufficient in respect to the allegation about the absence of railing, the instruction is faulty in that it does not include the condition that the absence of railing is the proximate cause of the injury to the decedent. At best this was an issuable fact both as a question of pleading and of testimony, and the additional element that it must be shown by the testimony that this absence of railing, if it was a fact, contributed proximately to the injury of the decedent should have appeared in this instruction. On the question of pleading on this feature of the case, the following cases are applicable: *Ten Broeck* v. *Wells* (C. C.), 47 Fed. 690; *Sneed* v. *Moorehead*, 70 Miss. 690 (13 South. 235). On the question of

Sig. 11

the instruction and the necessity of showing that the negligence complained of was the proximate cause of the injury, the following cases are instructive: *Acton v. Reed,* 104 App. Div. 507 (93 N. Y. Supp. 911) ; *Radley v. Knepfly* (Tex.), 135 S. W. 111; *Weeks v. McNulty,* 101 Tenn. 495 (48 S. W. 809: 43 L. R. A. 185: 70 Am. St. Rep. 693).

5. The circuit court refused to give the jury this instruction requested by the defendant:

"If the accident charged in the complaint happened because of acts over which the defendant had no control, or of which the defendant did not know, then you must find a verdict in favor of the defendant."

6. On the contrary, over the defendant's objection, the jury was instructed as follows:

"Now if you should find in this case that Mr. Scholl, the deceased, was guilty of contributory negligence which brought about his injuries, but if you find that the result of this contributory negligence on his part could have been prevented by the defendant taking him in and administering unto him, and he failed to do that, notwithstanding the fact of contributory negligence on the part of the deceased, Charles Scholl, then and in that case the defendant would be liable because the contributory negligence of the deceased would not be the proximate cause of the injury which happened to him. In other words, though one may be guilty of contributory negligence, if the defendant has it within his power to minimize or stop the effect of such contributory negligence, and he failed to do that, why then his failure so to do becomes the proximate cause, notwithstanding the contributory negligence of the plaintiff."

Under the pleadings and testimony it was at least debatable whether or not decedent was really hurt when defendant found him, or whether he was merely drunk, or, even if he then had a broken leg, that the appellant might not have honestly mistaken his condition for one of intoxication and his talk for the maudlin mutterings of a drunkard.

7. It is of course the duty of an innkeeper to take ordinary care to keep his buildings and premises reasonably safe for the use of his guests. These he is bound to furnish, but he cannot compel his guests to avail themselves of the accommodations he has provided. He has no custody or control of his patrons as of a patient or a prisoner. It is not pretended in this case that the defendant was conducting a refuge home for inebriates. There was testimony before the jury, as reported in the records, tending to show that all the porches and steps of the hotel were equipped with substantial railings; that the decedent was hurt as the result of his own negligent conduct; and that his injury was unknown to the innkeeper. The defendant had a right to have this theory presented to the jury by the court in its instructions. Granting, then, that the deceased came into a dangerous predicament as the result of his own fault, whatever duty of the defendant then arose must depend upon his knowledge of the situation, either actual or imputed.

8. It is axiomatic in the law that, although one's own negligence has brought him into danger, he cannot be willfully or wantonly hurt by another with impunity. On the other hand, many authorities have laid down the rule that, in order to charge the defendant in such a case, he must have had actual knowledge of the hazardous situation of the person alleged to have been injured by the defendant's fault. In *Smith* v. *Southern Pac. Co.*, 58 Or. 22, 36 (113 Pac. 41, 46), Mr. Justice BEAN states the rule thus: "Where plaintiff negligently assumed the position of danger in such a degree and so contributed to his hurt as to leave him without right of recovery for any primary negligence of the other party, he may nevertheless recover if the person he charges with the wrong or injury became aware of his peril in time to avoid, by the proper use of all the means at his command, injuring

him and listlessly and inadvertently or negligently failed
to resort to such means, provided he is himself free from
negligence after he became conscious of his danger."
Again in *Stewart* v. *Portland R. L. & P. Co.*, 58 Or. 377,
381 (114 Pac. 936, 938), Mr. Justice MCBRIDE used this
language: "In order to invoke the 'last clear chance
doctrine' plaintiff must plead and prove that defendant,
after perceiving the danger and in time to avoid it, negli-
gently refused to do so." "The doctrine which makes a
personal injury the fault of him who has the last clear
opportunity to prevent it has coupled with it, and in it,
the element of notice." *Rowe* v. *So. Cal. Ry.*, 4 Cal. App.
1 (87 Pac. 220). "Doubtless, notwithstanding the negli-
gence of the plaintiff has put him in peril, yet if it can
be perceived in time by the defendant so that, by the
exercise of ordinary diligence on his part, injury can be
avoided, the defendant will be held for the injury. That
is based upon the fact that the defendant did really know
of the danger, not upon the proposition that he would
have discovered the peril of the plaintiff, but for remiss-
ness on his part. Under this rule a defendant is not
liable because he ought to have known." *Herbert* v.
*S. P. Co.*, 121 Cal. 227 (53 Pac. 651). The rule is also
approved in *Harrington* v. *Los Angeles Ry. Co.*, 140 Cal.
514 (74 Pac. 15: 63 L. R. A. 238: 98 Am. St. Rep. 85) ;
*Sauer* v. *Eagle Brewing Co.*, 3 Cal. App. 127 (84 Pac.
425) ; *Green* v. *Los Angeles Terminal Ry. Co.*, 143 Cal.
31 (76 Pac. 719: 101 Am. St. Rep. 69) ; *Black* v. *N. Y.
Ry. Co.*, 193 Mass. 448 (79 N. E. 797: 7 L. R. A. [N. S.]
148: 9 Ann. Cas. 485). Other authorities hold that the
defendant in such cases is bound not only by what he
actually knew of the situation of the plaintiff, but also
by what he might have discovered by the exercise of
ordinary care in time to avoid injuring the plaintiff.
*Bourett* v. *Chicago & N. W. Ry. Co.* (Iowa), 121 N. W.
380 ; *Roanoke Ry.* v. *Carroll*, 112 Va. 598 (72 S. E. 125) ;

*Ind. Ter. & Tract. Co.* v. *Croly* (Ind. App.), 96 N. E. 973.
None of the precedents, however, go further than to
judge the defendant by what he ought to have known if
he had been ordinarily observant.

It is not necessary to decide here whether a defendant
in such cases is to be judged by what he ought to have
known or only by his actual knowledge, nor is it intended
to distinguish or modify the utterances of this court on
that subject already quoted. On the record made in this
case it matters not which standard should be adopted,
for the instruction given by the court on that feature
and last above quoted omits entirely the element of
defendant's knowledge, either actual or imputed, of the
decedent's condition of danger. On account of this omis-
sion, the rules, as stated by the court, would make the
defendant virtually an insurer of the injured person as
to the consequences of his own imprudent conduct. As
against any control of the defendant, barring disturb-
ance of the other guests, the plaintiff's intestate had a
right to wander about the premises in the dark or lie
outdoors upon the ground at 2 o'clock in the morning
either drunk or sober. Under such circumstances, it
is not apparent that the defendant owed him any duty
or had any authority to prevent him from doing so. At
least the duty would be far different from what would
be due to one suffering from a broken leg. It is clear
that the court should have, in any event, submitted to
the jury the question of whether the defendant knew,
or by the exercise of reasonable diligence ought to have
known, of the decedent's broken leg and consequently
helpless condition. It is easy now to look back and say
that some time during the night, between bedtime and
the next morning, when the fracture of the decedent's
leg was actually discovered, he had suffered that dis-
abling injury. On the other hand, there was a fair ques-
tion in the testimony as to whether, during the time

Scholl came under the observation of the defendant, the former was not injured, but merely in a state of voluntary intoxication, over which the defendant had no control. The degree of actual care incumbent on the defendant is in good reason different in each of the two conditions named, and he was entitled in any view of the case to have submitted to the jury the question of his knowledge, whether we should hold it to be actual or constructive, to be binding on him.

9. The circuit court also refused, over the exception of the defendant, to give the following instruction:

"If drunkenness was the proximate cause of the death of the deceased, if he got drunk under such circumstances as any reasonable and prudent man could foresee that he was putting himself in such a condition that this result might probably happen, then the plaintiff cannot recover."

This instruction should have been given in connection with the defense of contributory negligence urged by the defendant in his answer. In no part of the charge given to the jury was there any attempt to define what effect voluntary drunkenness of the decedent as an element of contributory negligence would have upon the liability of the defendant. In *Smith* v. *Norfolk & So. Ry. Co.*, 114 N. C. 728 (19 S. E. 863, 923: 25 L. R. A. 287), the following language occurs: "We are also of the opinion that there was an error in ignoring that universally established principle of the law of contributory negligence which imposes upon one, who has voluntarily disabled himself by reason of intoxication, the same degree of care and prudence which is required of a sober person. * * It would be a strange rule of law that regarded a certain course of conduct negligent and blameworthy upon the part of a sober man, but that held the same conduct on the part of the same man when intoxicated excusable. Drunkenness will never excuse one for failure to exercise the measure of care and prudence which is due from a sober man under the same circumstances.

Men must be content to enjoy the pleasures of intoxication with its perils. When they make themselves drunk, and in that helpless condition wander upon the premises of sober men and sustain an injury, they will not be heard to plead their intoxication as an answer to the charge on negligence. * * " Said Mr. Justice COLLINS in *Bageard* v. *Con. Tract. Co.*, 64 N. J. Law, 316, 322 (45 Atl. 620, 622: 49 L. R. A. 424, 427 (81 Am. St. Rep. 498) : "The true rule is that voluntary drunkenness does not relieve the drunken man from the degree of care required of a sober man in the same circumstances, and, if his drunkenness renders him incapable of exercising such care, then it contributes to any injury thereby sustained and bars recovery for another's negligence." To the same effect are the following cases: *Fisher* v. *W. Va. Ry. Co.*, 39 W. Va. 366 (19 S. E. 578: 23 L. R. A. 758) ; *Welty* v. *Ind. Ry. Co.*, 105 Ind. 55 (4 N. E. 410) ; *Rollestone* v. *Cassirer*, 3 Ga. App. 161 (59 S. E. 442) ; *Keeshan* v. *Elgin Tract. Co.*, 229 Ill. 533 (82 N. E. 360).

It is substantially charged, as a ground of contributory negligence, that at an unreasonable hour of the night, after all others on the premises had retired, the decedent went outside of the hotel without the knowledge or notice of the defendant and, while so intoxicated at that time, received the injury of the broken leg, but after the accident the decedent did not notify or warn the defendant that he had sustained the injury. That this would be contributory negligence is sustained by the following authorities: *Dailey* v. *Distler*, 115 App. Div. 102 (100 N. Y. Supp. 679) ; *Cook* v. *McGillicuddy*, 106 Me. 119 (75 Atl. 378) ; *Gaffney* v. *Brown*, 150 Mass. 479 (23 N. E. 233) ; *Walker* v. *Midland Ry. Co.*, 55 L. T. R. (N. S.) 489. The same effect was given to like conduct of sober persons in the cases of *Watson* v. *Manitou Ry. Co.*, 41 Colo. 138 (92 Pac. 17: 17 L. R. A. [N. S.] 916), and *Reed* v. *Axtell*, 84 Va. 231 (4 S. E. 587). In the first of

these cases the plaintiff was staying for the night at a hotel on Pike's Peak. He got out of bed during the night and, after sitting by the fire awhile, desired to urinate, and was told that he would have to go outside as there was no suitable place in the building. A light in the hotel shone outside for a considerable distance, but he went diagonally away from it about 35 feet, where he fell over a retaining wall built along the track of the defendant company, the proprietor and lessor of the hotel. The plaintiff's own conduct was held to be contributory negligence defeating his recovery. In *Reed* v. *Axtell* the plaintiff by her own choice was spending the night in the waiting room of a railway of which the defendants were receivers. Finding there was no ladies' toilet in the depot, she walked out in the darkness without inquiring the way and fell from the platform, whereby she was injured. The Supreme Court of Virginia denied her right to recover, holding that she was guilty of contributory negligence. In brief, the rule laid down by the authorities quoted is that a man in a state of voluntary intoxication is held to the same degree of care expected of a sober man under like circumstances. Although, as stated, some authorities hold that a defendant is liable under the doctrine of "the last clear chance" if by reasonable care he could have discovered the position of peril in which the decedent was at the time, yet none of them make this an exception to the old-established rule that, if the negligence of the plaintiff in any way contributed proximately to his own injury, he cannot recover or hold the defendant liable although the latter may have been negligent.

10, 11. The principle upon which a defendant is held liable under the doctrine of "the last clear chance" is that, although the plaintiff has been negligent in placing himself in a position of danger, yet, if his negligence has spent its force and culminated, it has ceased to be a

proximate cause, and the negligence of the defendant is a succeeding active cause in producing the injury. The principle does not apply in cases where the negligence of the plaintiff continues up to the time of the infliction of the injury. So in this case, if the drunkenness of the decedent was voluntary and continued to affect the case up to the time he received the injuries complained of, he would be held responsible for his own negligence and could not recover from the defendant. In other words, if the plaintiff's intestate, while voluntarily intoxicated, received the injuries in question, he must be judged by the same standard of conduct applied to a sober man in a like situation, so that, if he came to his hurt and its consequences by his own negligence contributing to that result, whether drunk or sober, that negligence must have culminated and spent its force and so ceased to affect the case before any mere nonfeasant neglect on the part of the defendant would render him liable.

It may be true that the decedent was sick from causes independent of what he had drunk, and that he was injured without any negligence on his part, and it may also be that his negligence, if any, had culminated, and that the defendant was subsequently negligent in a way to produce the injury complained of, but with this question of fact we have nothing to do for the present purposes. There was also testimony on which the defendant was entitled to rely, as supporting his theory of the case, that the decedent was negligent in a way contributing to his own harm in that he became voluntarily intoxicated and on account of that experienced the injuries of which complaint is made, and the defendant was entitled to have this theory of the case presented to the jury with proper instructions. Most of the cases relied upon by the plaintiff are those in which the defendant had control of or was actively operating some agency, like a locomotive or street car, by the positive use of which

the injury was inflicted. In substantially all of them
the defendant did some affirmative act succeeding and
not synchronous with the plaintiff's negligence, but which
produced the harm of which the complaint was made.
One of such cases was *Northern Central Ry. Co.* v. *State*,
29 Md. 420 (96 Am. Dec. 545), in which the company's
train collided with the intestate and apparently killed
him outright, thus far without liability for all that was
disclosed. After the train was stopped, the injured man
was found on the pilot of the locomotive helpless and
seemingly dead. He was removed from that place by
the employees of the company and, at the instance of the
local agent, who was unwilling to have the body in the
station, was locked up alone in a warehouse for the night,
where he was laid upon a board resting upon some bar-
rels. Next morning it was discovered that he had revived
during the night and had moved about in the room where
he was confined, and had died of hemorrhage from an
artery severed by colliding with the train. The court
held substantially that, in affirmatively assuming to care
for the injured person, and then acting as it did through
its employees, with at least imputed knowledge of the
situation on their part, the company was guilty of an
independent negligence operating after any neglect on
the part of the decedent had culminated and spent its
force, and that the case was properly submitted to the
jury on that theory. Another case was *Depue* v. *Flatau*,
100 Minn. 299 (111 N. W. 1: 8 L. R. A. [N. S.] 485).
There the plaintiff during a cold winter day had gone
in a sleigh to the defendants' home to purchase some
cattle. While there he was taken sick, as he said, or
drunk, as the defendants contended, but at any rate
became helpless. In this condition the defendants refused
to allow him to stay at their house, and one of them took
him out, placed him in his cutter, and, as he was unable
to hold the reins, put them around his shoulders and

started the team along the road towards where the plaintiff lived. The team left the highway, and the complainant was badly frozen. Some of his fingers were necessarily amputated as a result. Here, as in the other case, the defendants had undertaken affirmative action, knowing the helpless condition of the plaintiff, and had acted with negligence, operating subsequently to any fault of the plaintiff. Other precedents of like nature might be reviewed, but these suffice for illustration. These features plainly distinguish those cases from the one at bar in which the only delinquency attributed to the defendant is that of nonfeasance instead of malfeasance.

It was error not to submit to the jury the question of defendant's knowledge, either actual or imputed, of Scholl's true physical condition as a measure of the former's duty to the latter. It was also error not to submit the question of decedent's alleged voluntary intoxication in connection with the defense of contributory negligence, so that the jury could determine whether plaintiff's intestate was himself guilty of negligence, as charged, which operated with defendant's fault, if any, and continued until, and contributed to, the injury complained of, in which case, under all the authorities, the recovery of damages would be defeated.

The conclusion is that the decision of the court below is reversed, and the cause remanded for further proceedings not inconsistent with this opinion.

REVERSED.

Mr. JUSTICE BEAN delivered the following dissenting opinion:

This is an action for personal injuries to plaintiff's intestate. The cause was tried before a jury, resulting in a verdict and judgment in favor of plaintiff for $2,000. The allegations of the complaint are to the effect that the plaintiff was duly appointed by the county court of Multnomah County, Oregon, as administratrix of the

estate of Charles Scholl, deceased, and ever since has been and now is the duly appointed, qualified, and acting administratrix of such estate; that on and prior to the 24th day of August, 1908, plaintiff's intestate was a guest at Collins Springs Hotel, in the State of Washington, which hotel was conducted by the defendant, the proprietor thereof; that on the night of the 23rd or the morning of the 24th day of August, 1908, at about 2 o'clock a. m., the plaintiff's intestate fell from the porch of the above hotel to the ground, thereby breaking his leg, rendering him unconscious, and severely crippling him; that the defendant carelessly and negligently failed, neglected, and refused to place any railing or lights on and around the porch of the hotel to warn and prevent plaintiff's intestate from falling therefrom; that the porch was dangerous on account of its height from the ground; that, on account of such lack of railing and light upon the porch, plaintiff's intestate fell therefrom and was injured and crippled. It is further alleged that the defendant knew of the condition of plaintiff's intestate, but carelessly and negligently failed and neglected to pick him up or remove him to the house and care for his injuries; that Scholl's injuries were not necessarily fatal, and would not have caused his death had he been removed to the house and given medical care, nursing, and attention at the time the defendant was notified and had knowledge that he was lying helplessly on the ground outside of the hotel; that the defendant carelessly and negligently allowed plaintiff's intestate to remain outside, exposed to the inclement weather, and that, by reason of such carelessness and negligence, Scholl contracted pneumonia, from which he died on August 26, 1908, in Portland, Multnomah County, Oregon; that the deceased man was 32 years of age and earning $6.00 per day; that, by reason of his death, his estate has been damaged in the sum of $7,500.

The defendant by his answer admits that he was the proprietor of the hotel and that the decedent was a guest thereat; but denies the other material allegations of the complaint. The defendant further alleges that plaintiff's intestate was intoxicated, and by reason of his own neglect caused the accident whereby his leg was broken; that without the knowledge, notice, or fault of the defendant, while in such drunken condition, plaintiff's intestate remained outside of the hotel through his own fault; that, as soon as the defendant knew of the condition of decedent, he did all in his power to obtain medical assistance and relief. The reply put in issue the allegations of the answer. The defendant demurred to the complaint for want of sufficient facts to constitute a cause of action. At the close of plaintiff's testimony, counsel for defendant moved for a nonsuit, and also asked the court to instruct the jury to find a verdict for defendant.

I am unable to concur in the majority opinion of my associates. It is urged by counsel for defendant in their brief that the court should have dismissed the action upon its own motion, for the reasons: That the county court of Multnomah County, Oregon, was without jurisdiction to appoint an administratrix of the decedent's estate; that the circuit court had no jurisdiction to try the case; that there was no estate entitled to bring the action; and that the appointment of the administratrix was void. In order to sustain the allegation of the complaint as to the appointment of the administratrix, the defendant offered in evidence the order and decree of the county court of Multnomah County, Oregon, appointing Mary J. Scholl as administratrix of the estate of Charles Scholl, deceased, and ordering letters of administration to be issued to her. Counsel for defendant challenges the right of plaintiff to maintain this suit.

Section 68, L. O. L., provides that the defendant may demur to the complaint when it appears upon the face

thereof: (1) That the court has no jurisdiction of the person of the defendant, or the subject of the action; or (2) that the plaintiff has no legal capacity to sue. Section 71, L. O. L., enacts that, whenever any of the matters enumerated in Section 68 do not appear upon the face of the complaint, the objection may be taken by answer. Section 72, L. O. L., makes the provision that, if no objection is taken, either by demurrer or answer, the defendant shall be deemed to have waived the same, excepting only the objection of the jurisdiction of the court, and the objection that the complaint does not state facts sufficient to constitute a cause of action. Referring to the issues raised, it does not appear upon the face of the complaint, that the plaintiff had no capacity to sue. *Owings* v. *Turner*, 48 Or. 462 (87 Pac. 160); *Wilson* v. *Wilson*, 26 Or. 251 (38 Pac. 185.)

It was incumbent upon the defendant, if he desired to raise the question of the right of plaintiff to prosecute the action, to present the same by a proper plea. This would have been in the nature of a plea in abatement, which was waived by defendant pleading to the merits. Prior to the amendment of Section 74, L. O. L., in 1911 (see Laws 1911, p. 144), a plea in abatement was waived by pleading the same together with a plea in bar. *Hopwood* v. *Patterson*, 2 Or. 49; *Fiore* v. *Ladd*, 29 Or. 528 (46 Pac. 144); *Morgan's Estate*, 46 Or. 233 (77 Pac. 608: 78 Pac. 1029); *Rafferty* v. *Davis*, 54 Or. 77 (102 Pac. 305). Under these circumstances, after the trial of the cause had progressed for some time, we do not think that the defendant was in a position to raise the question as to the capacity of the plaintiff to bring the action.

Considering the motion for a nonsuit and the request of defendant for a directed verdict, it appears from the evidence that the defendant was the proprietor and manager of a health resort consisting of hotel, hot springs,

and grounds, and that plaintiff's intestate was a guest
at such resort occupying a room at the hotel; that Lola
Loomis, one of the guests at the hotel, was awakened
at about 2 o'clock on the morning of the accident by a
human being yelling in great agony for help.  According
to her testimony, she went to the defendant's room and
called him.  Together they went to the rear porch of
the hotel, with a light, where they saw Charles Scholl,
the decedent, lying on the ground four or five feet from
the rear of the porch.  The defendant said to him, "Well,
what in the hell is the matter down there?"  Scholl
answered, "Well, there is a wire on my leg cutting me
to the flesh; come down and take it off."  They went
down to where Scholl was, and the defendant again
asked him what the matter was, whereupon Scholl
repeated his complaint and held up his leg.  At this
the defendant said, "You get up and get away from
here, or I will get someone to take you away."  And
Scholl replied, "All right, if I can get away on one leg
I will go."  Scholl then tried to get up on one leg and
fell in a helpless condition.  The defendant did nothing
more, returned to his room, and left the man lying in
the roadway.  Miss Loomis further testified that there
was no light and no railing on the back porch at that
time, and that the porch was about eight feet from the
ground.

From the evidence it appears that the man was thinly
clad, and that the weather was cool and damp; that the
roadway was a driveway used in connection with the
hotel, between the hotel and its electric light power house.
It appears, however, that Captain Belcher, the proprie-
tor, went down to the dining room and placed a light
in the window where it would shine on the decedent,
who, as he states, was out by the woodshed near the
power house.  He claims that he watched the man for
one and three-quarter hours and then retired again.  The

testimony also tends to show that on the morning of the
accident, at about 6 o'clock, the decedent was found in
a delirious condition lying on some planks back of the
power house, with his leg broken in two places between
the knee and ankle so that the bone protruded through
the flesh; that about 8 o'clock of the same morning the
defendant was appealed to for aid, and, on being asked
for a drink of whisky for the injured man, said, "Give
him nothing." Upon being told that the man would die
if he did not give him something, the defendant replied,
"Let the s—— of a b—— die, I would not give him
anything." It further appears that someone asked
defendant for an old sheet for bandages, and that he
replied that he had none; and that he would not let the
decedent be taken into the hotel.

It is also in evidence that the power house where
Scholl was found was 75 feet from the hotel; that there
was a light in the hall, near the center of the hotel, at
the head of the stairs; that the electric lights were usu-
ally turned off at 11 o'clock, after which oil lamps were
lighted and placed near the head of the stairway; and
that once in a while these lights went out. It appears
that the decedent was playing cards in the hotel office
the evening before the accident. When found in a
delirious condition he was thought to have delirium
tremens. After it was ascertained that the decedent's
leg was broken, he was put on a stretcher and carried
into the power house, which was warmed only by the
sun. It seems that the defendant telephoned for a doc-
tor, a distance of 10 miles, and, failing to obtain one, had
the decedent taken upon a stretcher to a boat landing—
at about 9 o'clock—where the injured man waited for
nearly two hours before being taken on the boat to the
Good Samaritan Hospital in Portland, where he died the
next morning about six hours after reaching there. It
appears that the clothing of the decedent was damp

when he was taken upon the boat, and that when he arrived at the hospital he was in a semi-conscious condition suffering from a low type of pneumonia which caused him to be delirious.

Much of the evidence on the part of plaintiff is contradicted on the part of defendant, who claims that all the porches had railings with the exception of the rear porch, which was one foot above the ground; the roadway being eight or ten feet below the level of the back porch. The defendant states that he asked the decedent to either come into the house or go away; that he recognized the man to be Charlie Scholl, who registered at the hotel August 23rd; that the man was really delirious. He further states that he did not understand any one to ask for bandages, and that he did not remember using the language attributed to him, and furthermore had no occasion to use it; that he had never observed Scholl around the place under the influence of liquor. In short, there was evidence introduced on the part of plaintiff tending to sustain the allegations of the complaint. We have nothing to do with the conflict in the evidence. This was settled by the verdict of the jury. It is contended on behalf of defendant, in support of the motion for a nonsuit, and as alleged in the further and separate answer, that the decedent came to his death through alcoholism. The defendant, however, testified on cross-examination to the effect that he never saw the deceased in an intoxicated condition while a guest at the Springs. It appears that no complaint was made to the defendant by any of the guests.

The testimony of McCosky, Fallon, Dr. McKay, Mrs. Scholl, and Mr. Deckenbach tends to show that the decedent did not die from alcoholism. The jury by their verdict found that the death of plaintiff's intestate was caused by the negligence and carelessness of defendant in failing to have lights and a railing on the rear porch,

and in failing to care for decedent when he had notice of the man's physical condition and knew, or should have known, that if he were left outside, exposed to the inclement weather, he would contract some disease which would probably result in death.

It is urged by counsel for defendant that the defendant owed no duty to plaintiff's intestate, and therefore the court erred in permitting the jury to consider the evidence as to what occurred outside of the hotel. The driveway where defendant found decedent appears to be connected with the resort and a part of the hotel premises. It can hardly be said, either from a legal, moral, or humane standpoint, that the proprietor of a hotel is relieved of all duty to his guest when the latter crosses the hotel threshold and goes outside upon the grounds. It is the duty of the hotel keeper to take reasonable care of his guests so that they are not injured by want of care on his part while they are at the inn as his guests. Wandell's Law of Inns, Hotels, and Boarding Houses, p. 114. The defendant did not stand in the position of a stranger to Scholl at the time the decedent was found in the driveway of the hotel crippled, delirious, and pleading for help. The evidence tends to show, and the jury by their verdict in effect said to defendant: Charles Scholl, the decedent, was your guest, and ye took him not in; in pain and delirious, helpless, with a broken limb, prostrate upon the ground, and ye ministered not unto him; thirsty, and ye gave him no drink; partially naked, and ye clothed him not; he asked for bandages with which to bind his broken limb, and ye gave him no cloth.

The law states that it was the duty of the defendant to take reasonable care of Scholl while the latter was a guest at his summer resort. The jury found, from the evidence, that the defendant was negligent in his duty, causing damages to the decedent's

estate in the sum of two thousand dollars. The apparent
reason that the defendant did not render aid to decedent
was that he thought him intoxicated. In the case of
*Cincinnati, New Orleans & Texas Pac. Ry. Co.* v. *Marrs'*
*Adm'x*, 119 Ky. 954, 962 (85 S. W. 188, 190: 70 L. R. A.
291, 294: 115 Am. St. Rep. 289), the court said: "In
the case at bar, appellant's servants knew Marrs was
drunk, and the circumstances surrounding him were such
as would lead any reasonably prudent person to believe
that he was incapable of caring for himself." This was
held as a reason why such aid as common humanity
required should have been rendered the decedent. In
the case at bar, the defendant, having invited the dece-
dent and the public to his health resort, was under more
than a moral obligation to render aid and care to the
decedent who was his guest. When he found plaintiff's
intestate in a helpless condition, delirious and unpro-
tected from the elements, the negligent failure to perform
his duty rendered him liable for the natural consequences
of his neglect. *Northern Central Ry. Co.* v. *State*, 29
Md. 420 (96 Am. Dec. 545).

In the case last cited it appears that the deceased was
run over by a train of cars of the Northern Central Rail-
way Company. After the train was stopped, the injured
man was found upon the pilot of the engine in a help-
less and apparently lifeless condition. The employees of
the company moved him to a warehouse where they locked
him up for the night. On opening the warehouse in the
morning, the man was found to have come to life during
the night and to have afterwards died from the hem-
orrhage of an artery which had been severed by the
collision. It was held that, from whatever cause the
collision occurred, after the train was stopped it became
at once the duty of the agents of the defendant, in charge
of the train, to remove the injured person, and to do
it with a proper regard to his safety and to the laws

of humanity. At page 440 of 29 Md. (96 Am. Dec. 545), of this case, the court said: "Negligence, in a case like this, is not so much a question of law as it is a question of fact, depending for its determination upon a consideration of all the attending facts and circumstances, in connection with the ordinary habits, conduct, and motives of men. For the trial and determination of such a question, a jury of experienced and intelligent men are peculiarly adapted." This case is cited and the principle enunciated and approved in *Baltimore & Ohio R. R. Co.* v. *State,* 41 Md. 268, and also in *Dyche* v. *Vicksburg, Shreveport & Pac. R. R. Co.,* 79 Miss. 361 (30 South. 711).

It is a rule of the common law, recognized as necessary to good order and to the proper protection of society, that, in the exercise of his legal rights, one is bound to observe ordinary care not to injure others. As subjects of this general duty, persons under disability constitute no exceptions. And one who is guilty of a breach of such duty as to them may be held liable for the consequences although his act or omission might have been attended with less serious results, or might not have resulted in injury at all, but for the injured person's previous disability. But the law goes further and imposes the duty of exercising special care toward persons more or less disabled from caring for themselves. Note to *Union Pac. Ry. Co.* v. *Cappier,* 69 L. R. A. 513, on page 514.

It would seem that the injury and danger would have been greatly lessened if the defendant had allowed Scholl to be taken into the hotel the next morning after the accident and warmed and cared for, as the evidence tends to show he was requested to do.

There are but few similar cases in the records of the courts in the various states. In the case of *Depue* v. *Flatau,* 100 Minn. 299, 303 (111 N. W. 1, 2: 8 L. R. A. [N. S.] 485), the court, speaking through Mr. Justice

BROWN, says: "This is no doubt a correct statement of the general rule applicable to the Good Samaritan, but it by no means controls a case like that at bar. The facts of this case bring it within the more comprehensive principle that, whenever a person is placed in such a position with regard to another that it is obvious that, if he does not use due care in his own conduct, he will cause injury to that person, the duty at once arises to exercise care commensurate with the situation in which he thus finds himself, and with which he is confronted, to avoid such danger; and a negligent failure to perform the duty renders him liable for the consequences of his neglect." And the court in speaking of the plaintiff, at page 304 of 100 Minn. (at page 3 of 111 N. W.: 8 L. R. A. [N. S.] 485), says: "He was taken suddenly ill while their guest, and the law, as well as humanity, required that he be not exposed in his helpless condition to the merciless elements."

In the case of *Harrington* v. *Los Angeles Ry. Co.,* 140 Cal. 514, 525 (74 Pac. 15, 19: 63 L. R. A. 238: 98 Am. St. Rep. 85), the court says: "No purpose or design on the part of the motorman to injure was essential to defendant's liability, and the plain object of the instruction was to so inform the jury. By it the jury were substantially told that, although one might not have the actual intent to injure, still if there is on his part a reckless indifference or disregard of the natural or probable consequences of doing or omitting to do an act, and he does or fails to do the act, conscious, from his knowledge of existing circumstances and conditions, that his conduct will likely or probably result in injury, he is guilty of wanton negligence."

The court in the case of *Bessemer Land & Improvement Co.* v. *Campbell,* 121 Ala. 50, 59 (25 South, 793, 798: 77 Am. St. Rep. 17), says: "The person upon whom the duty of action rests does not discharge it by using

only the means immediately at hand. If a man is in a place where he will sooner or later be burned to death, and the person upon whom rests the duty of rescue has not at hand a bucket of water with which to extinguish the fire and save the life, but there is time for him to go and get it, he must go and get it. If it is necessary and there is time for him to go a mile for it, he must go that mile for it. Or, if a man is lashed to the top of a tree and likely to starve to death, the person whose duty it is to save him cannot excuse himself because he has no ladder; he must fetch one, and he must go as far as is necessary to fetch one within the time the man may survive."

In my opinion the questions as to the proximate cause of the injury, contributory negligence, and drunkenness were properly submitted to the jury by the trial court in the following instructions:

"If, on the other hand, you should find that the defendant did not have this railing there, nor this light there, as I have indicated to you, and as a result of their absence the deceased, Charles Scholl, fell, this of itself would not entitle the plaintiff to recover, because there is a proposition of law which says that one shall not be guilty of contributory negligence. * * And though there was negligence on the part of the defendant, if the deceased's own contributory negligence, concurrently and in combination with the negligence of the defendant, without any intervening or sufficient cause coming in between, would prevent a recovery. So that, even though there was negligence on the part of defendant, and you should also find there was contributory negligence on the part of the deceased, your verdict must be for the defendant."

The instruction held to be faulty in the majority opinion is fully cured by the following instructions, which should be considered together with that referred to:

"If, however, you should find there was negligence on the part of defendant, and no contributory negligence on the part of the deceased, then you are to ask yourselves, 'What was the result of this negligence?' If, as a result

of this negligence, this man, the deceased, received fatal injuries—that he was internally injured, that he was made unconscious, and from the exposure which took place there contracted pneumonia—then you will ask yourselves whether that was the result of the negligence of the defendant. If it was—that is, if the negligence of the defendant was the proximate cause of the condition of the deceased—and I will explain to you the meaning of that term 'proximate cause' later on, then the plaintiff would be entitled to recover, as I shall hereafter indicate to you."

The question of intoxication was fairly submitted to the jury by the following instructions:

"Now much has been said about 'proximate cause,' and it is well that you should understand that term. By 'proximate' is meant 'next,' and 'proximate cause,' 'next cause.' There may be a link in the chain of causes, or there may be an independent cause. What did Mr. Scholl, the deceased, die from? Was he, or was he not, in an enfeebled condition when he came there? Was he, or was he not, addicted to drink, as a result of which his troubles were brought upon him? If those causes independent of anything which happened at Collins Springs, brought about his death, then, of course, the defendant cannot be liable."

In the majority opinion it is stated: "It is clear that the court should have in any event submitted to the jury the question of whether the defendant knew, or by the exercise of reasonable diligence ought to have known, of the decedent's broken leg and consequently helpless condition."

According to the statement of counsel for defendant, on page 46 of their brief, the court did submit this question to the jury. I quote from that page of their brief:

"Succinctly stated, the court instructed the jury * * that defendant was liable if he found deceased outside the hotel in an apparently injured condition, and did not pick him up and provide shelter and protection for him and use reasonable care in treating him till proper medical attention and nursing could be received, and that,

if defendant knew, or with reasonable care could have known, of deceased being in such condition and could not care for himself, defendant was liable."

The cause was by the instructions of the trial court fairly submitted to the jury. After a careful examination of all the evidence which is contained in the record, it cannot be said that there is no competent evidence to support the verdict; and, under the provisions of Section 3 of Article VII of the Constitution of Oregon, the verdict should not be disturbed.

The judgment of the lower court should be affirmed.