YARRUT, Judge.
Plaintiff appeals from a judgment denying him damages for personal injuries and loss of wages suffered when he fell into a pit of an elevator shaft at the hotel where he was registered as a guest. The record shows that plaintiff, at the time he was in *194 jured at 3:40 o’clock A.M., on the date alleged, for six weeks, had been a registered guest at the Areola Hotel, located at 127 Chartres Street, in the Vieux Carre, New Orleans. Plaintiff is a seaman, and the hotel catered primarily to seamen. The lower floor of the building was occupied by a business establishment, not connected with the hotel. The hotel itself occupied only the second, third and fourth floors of the building.
The elevator in question was operated solely by the hotel and was located on the second floor of the building, but the first floor of the hotel. There was no elevator service from the ground floor to the second floor, that is, the first floor of the hotel. In order for guests to reach the second floor, they had to use the stairway from the ground floor.
The elevator was intended and used primarily for freight and for the hotel staff carrying cleaning and other hotel equipment. There is considerable dispute whether or not the elevator was marked or posted with signs indicating that it was a “freight elevator” and not a “passenger elevator.” The predominant testimony is that the elevator was so posted, though guests were permitted to use it, but the ascent and descent from the ground floor to the three floors of the hotel was primarily by stairways.
However, whether or not the elevator was so posted is not important, because the testimony leaves no doubt that plaintiff was particularly advised by the hotel manager that the elevator was a freight and not a passenger elevator.
The lady in charge of the hotel testified that when plaintiff registered as a guest, he stated that he was ill, suffering from some stomach disorder. She assisted him with his baggage to the fourth floor room by the use of the elevator, but made it plain to him that the elevator was a freight elevator and not a passenger elevator.
When examined under cross-examination under the Discovery Act plaintiff was confused and contradictory as to how the accident happened. He first stated that he opened the door and stepped in and fell, and thereafter sought to evade or avoid his prior statement that he had opened the door to the elevator, and insisted that the door was open. The bottom of the elevator shaft was two feet below the level of the floor. Plaintiff testified that, as he fell, he grabbed a rope, was stunned, and the elevator came down and crushed him as he lay prone on the floor of the elevator pit.
The lady manager occupied a room about 17 feet away from the elevator. She heard plaintiff’s cry and went to the scene. She quickly raised the elevator, saw that plaintiff was manipulating the ropes and appeared to be all right. She sent for an ambulance. The intern testified that when he arrived plaintiff was sitting up smoking a cigarette; that he examined plaintiff thoroughly and could only find one or two abrasions on his hip; he had no fractured bones. He stated positively that plaintiff was intoxicated, and not in shock as contended by plaintiff.
Plaintiff’s testimony that he had to be carried to his room was contradicted by the doctor and the hotel manager both of whom testified that plaintiff got out of the pit and walked up to his room unassisted, though accompanied by two hotel guests.
In his first examination under discovery (October 2, 1957) plaintiff denied he was intoxicated. When asked what he had done that evening, he said he first went to a movie, then to his room, read and, at midnight, decided to go out for a walk. He visited five or six saloons or night clubs and had five or six beers. However, when he was again examined by deposition (May 29, 1958) in his own behalf, he testified he had not more than two beers, and was more lucid and coherent about the accident than he was on October 2, 1957, with eight months to reflect.
*195 The elevator mechanic who, for many years, checked and kept the elevator in proper repair, testified that it was a “Heller overhead traction machine, cable-operated” for freight. To ascend you would pull the rope down; to descend you would pull it up. He further testified that the City Inspector had approved and renewed the elevator license; that on the many occasions since 1939 he visited the hotel and saw signs “No Passengers” or “Freight Only,” and that oil drippings from the elevator shaft showed it could not have been operated more than three times a day, hence it could not have been used generally as a passenger elevator.
Whether or not the elevator was intended solely for freight or a combination freight-passenger elevator, is not material because guests were permitted and not forbidden to use it, though other means of ascent and descent was provided by stairways.
Within seventeen feet of the elevator were two small electric lights sufficient to permit a normal person to see what he was doing. Because of his intoxicated condition, and probably sleepy too, plaintiff was not able, when he opened the door, to see the elevator was not there.
A hotel operator owes ordinary care to its patrons to prevent injury. De Latour v. Roosevelt Hotel, La.App., 1 So.2d 353.
A guest in a state of voluntary intoxication is to be judged by the same standard of conduct and held to the same degree of care as a sober man in like circumstances. 43 C.J.S. Innkeepers § 22, p. 1184; Scholl v. Belcher, 63 Or. 310, 127 P. 968.
Plaintiff had the burden to explain how the accident happened, which he failed to do. The only conclusion is that he walked blindly into the open shaft after he opened the door because of his intoxicated condition.
The defendants have proved their freedom from negligence, and that plaintiff’s fall and injury was due solely and only to his intoxicated condition. The judgment of the district court must be affirmed.
Affirmed.